IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE HARRINGTON d/b/a PARADISE CITY; CARL KRAMER, SR.; JOSEPH BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation,<br><br>Defendants. | Case No.<br><br>**COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |

Jane Doe, a victim of sex trafficking, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states, alleges and avers as follows:

## INTRODUCTION

1.

This case is brought pursuant to 18 U.S.C. § 1595, the civil remedy provision of the federal Trafficking Victims Protection Act (TVPA), and 18 U.S.C. § 2255. DOE is a young woman who, as a minor child, endured repeated non-consensual sexual acts at the hands of her trafficker and his collaborators. Her date of birth is October 1, 2003. From July 2019 through January 2020, 15-year-old DOE was exploited as, and was expected to "perform" as, a vehicle for the perverse sexual interests of men, to include Defendants herein. "JANE DOE" is a pseudonym, used to protect DOE's privacy and safety in recognition that she is a victim of sex trafficking.

2.

All of the men who used and abused DOE were fully aware that their sexual encounters were

1

not a consensual, romantic relationship.  For those men, the fact that DOE was there by coercion was "the point" – the fact of her coercion was, itself, sexually titillating.  Any of those men could have refrained (or even summoned law enforcement); instead, all proceeded to subject DOE to their personal and perverse sexual preferences.

3.

Some of these Defendants have been prosecuted.  DOE has cooperated with all aspects of the criminal litigation, such that the State of Nebraska was able to obtain convictions against some of these Defendants.  But no Defendant has yet been held accountable directly to DOE for the harm they inflicted on her.  No Defendant has yet compensated DOE for how he exploited her body and her life for his own short-term sexual gratification.

**PARTIES, JURISDICTION AND VENUE**

4.

DOE is a citizen and resident of Harlan County, Nebraska.  Her date of birth is October 1, 2003.  She is proceeding under a pseudonym because she is a victim of sexual abuse.

2

5.

Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska.



At all relevant times, he owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska.

6.

Defendant Carl Kramer, Sr. is a citizen and resident of Oxford, Furnas County, Nebraska.



7.

Defendant Joseph Baumbaugh (aka "UPS Joe") is a citizen and resident of McCook, Red Willow County, Nebraska.



8.

Defendant Jay Sedhi Hospitality LLC ("JSH") was at all relevant times a Nebraska limited liability corporation, domiciled in Box Butte County, Nebraska.

9.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 18 U.S.C. §§ 1595 and 2255. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Furnas and Buffalo Counties, Nebraska.

## FACTUAL BACKGROUND

### DOE and Billy Quinn

10.

DOE was raised mostly in Furnas County, Nebraska. Her home life as a child and teenager ranged from chaotic to abusive. She was homeschooled and isolated from both peers in her age

4

group and adults who could have been helpful to her. She did not receive the benefit of exposure to more stable, less dangerous and chaotic ways to live.

11.

By age 14, DOE had run away, and was floating between homes of older siblings and other places she could stay. When DOE was 15, Billy Quinn, then age 55, offered to DOE that she could stay at a house he owned in Oxford, Nebraska.



12.

DOE knew Quinn. Some of her siblings had worked for Quinn, and Quinn had previously offered DOE a job. DOE knew Quinn to be violent. The first time DOE was alone with Quinn, he sexually assaulted her and held a knife to her throat.

13.

But, DOE was 15 years old, homeless, and totally without resources. She had no trustworthy family to help her. She did not have the fund of knowledge that an adult would have, to even ask for help from people who are reliable. And, DOE was in a county that has limited resources even for those who do know how, and who, to ask for help. DOE was making survival decisions out of

5

desperation, understandable immaturity, lack of information and trauma.

14.

Thus DOE accepted Quinn's offer for housing.  The terms and conditions of Quinn's offer were that DOE had to have sex with Quinn.

15.

In July 2019, Quinn began to traffic DOE to other men.

16.

*DOE, Quinn and KRAMER*

In 2019, KRAMER was 48 years old.  He owned the Oxford Meat Locker & Gun Store in Oxford, Furnas County, Nebraska.  He was a licensed firearms dealer and, per the Oxford Meat Locker & Gun Store website, "a proud member of the Oxford community."

17.

In autumn 2019, Quinn drove DOE to the Oxford Meat Locker & Gun Store after hours.



KRAMER was there.  Quinn and KRAMER discussed KRAMER paying $50.00 to have sex with DOE.  Quinn lifted up DOE's shirt to show KRAMER her breasts, and invited KRAMER to rub

6

DOE's vagina. Quinn instructed KRAMER on how to contact DOE via Snapchat when he wanted to have sex.

18.

KRAMER did not decline Quinn's invitations, contact law enforcement or do anything else to help DOE.

19.

Instead, between October and December 2019, KRAMER had sex with DOE at Oxford Meat Locker & Gun Store up to forty times, always paying DOE $50.00 after each event. On Quinn's orders, DOE then gave those payments to Quinn, and described the details of each sexual encounter to Quinn.

20.

KRAMER also demanded nude images of DOE. Via Snapchat, DOE complied with KRAMER's demands. KRAMER saved the nude images of DOE for his masturbation needs.

21.

KRAMER knew Quinn was trafficking DOE for money.

22.

KRAMER knew or should have known that DOE had no choice whether to participate.

23.

KRAMER knew or should have known that DOE was participating only under coercion.

24.

KRAMER conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to KRAMER's sexual benefit.

7

25.

*DOE, Quinn and Joseph "UPS Joe" Baumbach*

In August and September 2019, BAUMBACH was working for United Parcel Service as a delivery driver. His route included a property owned by Quinn in Furnas County. He was known as "UPS Joe," and was friendly with Quinn. He was 59 years old.

26.

When BAUMBACH arrived at Quinn's property, Quinn invited him to walk around to the back of the house. There, DOE was in Quinn's hot tub, on Quinn's orders. DOE was naked, also on Quinn's orders.

27.

Quinn invited BAUMBACH to "check out my prize," meaning DOE. BAUMBACH did, exclaiming "wow!" BAUMBACH did not leave, call law enforcement or do anything to help DOE. Instead, BAUMBACH used his phone to record a video of DOE in the hot tub.

28.

On a separate occasion, Quinn directed DOE to masturbate for BAUMBACH. Again, BAUMBACH did not leave, notify law enforcement or do anything to help DOE. Instead, BAUMBACH not only watched, but he also recorded DOE masturbating on his cell phone on Quinn's order, saving the recording as a keepsake for his own masturbation purposes.

29.

BAUMBACH knew Quinn was trafficking DOE for money.

30.

BAUMBACH knew or should have known that DOE had no choice whether to participate.

8

31.

BAUMBACH knew or should have known that DOE was participating only under coercion.

32.

BAUMBACH conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to BAUMBACH's sexual benefit.

33.

<u>DOE, Quinn and Shane Harrington d/b/a Paradise City</u>

Around Halloween 2019, Quinn drove DOE to Paradise City, a club owned by HARRINGTON outside of Elm Creek, Buffalo County, Nebraska.



34.

Quinn knew the manager of Paradise City, Timmy Jeys; the manager was an agent and employee of HARRINGTON, acting in the course and scope of his employment at Paradise City.



35.

With the knowledge and permission of the manager, Timmy Jeys, Quinn took DOE into Paradise City and showed her to a construction crew that was patronizing the club. The manager of Paradise City knew that Quinn was in the club for the purpose of "selling" DOE to its patrons, which is what happened: next door to Paradise City was a Rodeway Inn motel, where the Paradise City patrons had sex with DOE under Quinn's supervision.

36.

Timmy Jeys, the manager of Paradise City also facilitated one of the Paradise City dancers performing a sexual act on DOE while Quinn and DOE were there.

37.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew Quinn was trafficking DOE for money.

38.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment,

knew or should have known that DOE had no choice whether to participate.

39.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew or should have known that DOE was participating only under coercion.

40.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment with HARRINGTON, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with a teenage girl.

41.

*DOE, Quinn and Jay Sedhi Hospitality LLC*

In 2019, Jay Sedhi Hospitality LLC ("JSH") owned the Rodeway Inn, located near Paradise City outside of Elm Creek, Buffalo County, Nebraska.



42.

When Quinn took DOE to Paradise City to traffic her to patrons of that club, the arrangement was for the patrons to have sex with DOE at the nearby Rodeway Inn.

11

43.

The employees and agents of the Rodeway Inn were, at all relevant times, acting in the course and scope of their employment with JSH.

44.

Before October 2019, the employees and agents JSH, working at Rodeway Inn, knew or should have known that the Rodeway Inn was used for sex trafficking.

45.

Red flags and direct employee interactions which alerted or should have alerted employees and agents of JSH to sex trafficking activity at the Rodeway Inn included, but was not limited to:

* Proximity to Paradise City;

* Proximity to a truck stop;

* Ability of guests to enter rooms from the parking lot, instead of traveling through a staffed hotel lobby;

* Indicia of commercial sex within the rooms, including used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

* Indicia of illegal drug use;

* Excessive requests for sheets and/or housekeeping service;

* Violence and loud disturbances in common and public hotel areas;

* Excessive calls to law enforcement;

* Hotel guest complaints; and/or

* Online reviews indicating the likelihood of sex trafficking and criminal activity at the Rodeway Inn.

46.

Before and during the period that DOE was trafficked at the Rodeway Inn, JSH ignored these signs that its hotel was used for sex trafficking, to its financial benefit.

47.

The financial benefit was that people would pay for rooms at the Rodeway Inn – an otherwise dilapidated, rundown and vermin-infested motel – because they knew they could use the rooms to have sex with victims of sex trafficking, without interference by hotel staff.

48.

JSH, acting through its agents and employees, participated in a venture with Quinn, by tacit agreement and/or pattern of conduct, by which Quinn could traffic DOE and JSH would receive the benefit of customers paying for rooms where they could have sex with DOE.

49.

There was a continuous business relationship between JSH and sex traffickers, including but not limited to Quinn.  By that relationship, sex traffickers, including Quinn, knew that they could traffic captive sex workers like DOE at the Rodeway Inn without interference from hotel staff.

50.

JSH failed to enact any policies or training for its employees or agents to prevent sex trafficking at the Rodeway Inn.  This failure was, in fact, a choice designed to keep rooms rented by people who wanted to have sex with captive sex workers – because the hotel was otherwise an unattractive lodging option for travelers without an interest in criminal activity.

51.

At the Rodeway Inn, Quinn took DOE from room to room, presenting DOE for commercial

13

sexual activity to the paying guests of Rodeway Inn.  DOE was coerced into sexual intercourse over and over, ending only when one of the guests forced her into anal sex and she fled from the room.

*The criminal investigation*

52.

On January 19, 2020, DOE revealed to a brother-in-law the abuse she had been enduring at the hands of Quinn and his co-conspirators, including these Defendants.

53.

DOE's brother-in-law notified the Furnas County Sheriff's Office, which in turn initiated a criminal investigation.  The investigation was taken over by the Office of the Nebraska Attorney General.  The Attorney General ultimately obtained convictions against Quinn, BAUMBACH, KRAMER, BROOKS and multiple other men who had sex with DOE for money.

## FIRST CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### KRAMER AND BAUMBACH

54.

KRAMER patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with KRAMER.

55.

KRAMER patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with KRAMER.

14

56.

BAUMBACH patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with BAUMBACH.

57.

BAUMBACH patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with BAUMBACH.

58.

DOE suffered and continues to suffer damage as a result of KRAMER's and BAUMBACH's direct participation in her involuntary trafficking.

## SECOND CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### HARRINGTON D/B/A PARADISE CITY

59.

Doing business as Paradise City, HARRINGTON participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

60.

Employees and agents of Paradise City patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

61.

Employees and agents of Paradise City patronized and solicited DOE, knowing and/or in

15

reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

62.

HARRINGTON, doing business as Paradise City, acting through his employee and agent Timmy Jeys, knew or should have known that Paradise City violated 18 U.S.C. § 1591 with respect to DOE.

63.

Paradise City, acting through its agent and employee Timmy Jeys, nonetheless participated in this venture, and knowingly benefitted from that participation.

64.

DOE suffered and continues to suffer damage as a result of Paradise City's direct participation in her involuntary trafficking.

### THIRD CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### JAY SEDHI HOSPITALITY

65.

Doing business as Rodeway Inn, Jay Sedhi Hospitality LLC ("JSH") participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

66.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

16

67.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

68.

Employees and agents of Rodeway Inn on this occasion were familiar with Quinn.

69.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn was taking a young woman from room to room was so that he could present her for commercial sexual activity to its guests.

70.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn, who himself was not a hotel guest, was loitering on its property, outside of the hotel rooms, was because he was waiting for Rodeway Inn guests to finish their commercial sexual activity with DOE.

71.

JSH, doing business as Rodeway Inn, acting through its employees and agents, knew or should have known that Rodeway Inn and its guests violated 18 U.S.C. § 1591 with respect to DOE by allowing Quinn to present DOE to its guests for commercial sexual activity.

72.

JSH, doing business as Rodeway Inn, acting through its agents and employees, nonetheless participated in this venture, and knowingly benefitted from that participation.

17

73.

DOE suffered and continues to suffer damage as a result of JSH's participation in her involuntary trafficking.

## DAMAGES

74.

For his own financial gain and sexual perversions, Billy Quinn forced DOE – a teenager whom he found in a wounded, desperate and vulnerable state – to endure months of brutal sexual, physical and emotional abuse.  But Quinn did not act alone: each Defendant in this case played an active and knowing role in DOE's torture.

75.

Because of the selfishness of these Defendants, DOE experienced being sold for $50.00 for the sexual pleasure of strange adult men, over and over and over for months.  She received, and internalized, the inescapable messages that:

* she was nothing more than an orifice with a person around it;

* she had no rights, no agency, no past, no future and no soul; and

* she was so lacking in value as a human being that it did not matter if they hurt DOE or even if they killed her.

76.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity.

77.

With each Defendant, DOE experienced the despairing recognition that yet another man

who could help her, was instead adding to her sexual and emotional victimization.

78.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their perverse sexual needs.

79.

None of those messages, and none of those recognitions, faded away simply because law enforcement finally apprehended Quinn.  These are bells that cannot be un-rung.

## PUNITIVE DAMAGES

80.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants as alleged herein.  The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including DOE.  Defendants committed the acts and omissions alleged herein and subjected DOE to brutal and inhumane treatment.  Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

81.

The recovery of punitive damages is permitted under 18 U.S.C. § 1595 and 18 U.S.C. § 2255, and is appropriate in this case.  This instance of reckless and callous indifference to DOE's life and safety should be punished through the imposition of punitive damages so as to make an example of

conduct that will not be tolerated.

## ATTORNEY'S FEES

### 82.

As a result of Defendants' actions as alleged herein, DOE was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.     For compensatory damages in an amount to be specifically proven at trial;

2.     For punitive damages in an amount to be determined at trial;

3.     For reasonable attorney's fees and the costs of litigation;

4.     For post-judgment interest at the maximum legal rate;

5.     For costs of suit incurred herein; and

6.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that this matter be tried to a jury in North Platte, Nebraska.

JANE DOE, Plaintiff,


By: ___/s/ *Maren Lynn Chaloupka*_____
Maren Lynn Chaloupka – NSBA #20864
Chaloupka Law LLC
P.O. Box 1724
1906 Broadway
Scottsbluff, Nebraska  69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

-AND-

Todd Flynn – NSBA #15866
Flynn Law Office
P.O. Box 247
Ainsworth, Nebraska 69210
(402) 382-3420
tflynnlaw@threeriver.net

*Attorneys for Plaintiff*