# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>SHANE HARRINGTON d/b/a PARADISE CITY; CARL KRAMER, SR.; JOEY BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation,<br><br>　　　　　　　　Defendants. | Case No. 7:25-cv-5010<br><br><br>**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Jane Doe, Plaintiff in the above-captioned matter, by and through her counsel of record, submits the following Response to this Court's Order to Show Cause, and moves this Court for an Order granting her leave to file a Second Amended Complaint (attached to this Motion as Exhibit 1, with proposed amendments highlighted in yellow), pursuant to Fed. R. Civ. P. 15(a)(2), showing as follows:

### 1.

Plaintiff filed this case on December 8, 2025, but did not immediately request summonses.

### 2.

On December 15, 2025, Michael Duffy sent correspondence to the undersigned, threatening Rule 11 sanctions on behalf of HARRINGTON. That letter, and its attached "Confidential Sales Contract," are attached and marked as Exhibit "A" to the Affidavit of Maren Chaloupka.

3.

The undersigned responded with correspondence dated December 22, 2025, attached and marked as Exhibit "B" to the Affidavit of Maren Chaloupka.

4.

On December 24, 2025, Plaintiff filed an Amended Complaint, wherein Plaintiff corrected the name of Defendant BAUMBACH in the caption and the text of the Amended Complaint (from "Joseph Baumbaugh" to "Joey Baumbach").

5.

Mr. Duffy wrote to the undersigned again on January 13.  His letter, and draft Rule 11 motion, are attached and marked as Exhibit "C" to the Affidavit of Maren Chaloupka.

6.

Counsel for Plaintiff reviewed what is now marked as Exhibit "C" and continued their research, to ascertain that they were not proceeding in violation of Rule 11.  On January 21, 2026, the undersigned sent Mr. Duffy the correspondence that is attached and marked as Exhibit "D" to the Affidavit of Maren Chaloupka, advising Mr. Duffy that Plaintiff intended to amend the Complaint to address the concerns Mr. Duffy had expressed.

7.

On January 23, 2026, the undersigned sent Mr. Duffy the correspondence and Second Amended Complaint that are attached and marked as Exhibit "E" to the Affidavit of Maren Chaloupka.  The undersigned filed the Second Amended Complaint that day.  By that time, no Defendant had entered an appearance in this matter.

8.

The undersigned was mistaken in her belief that because no Defendant had filed a first responsive pleading, she could amend the Complaint again without first seeking leave from this Court. She should have reviewed Rule 15 and, having now done so, acknowledges that her belief was wrong.

9.

As of the date of this Motion, no Defendant has yet filed a first responsive pleading. Discovery has not yet begun.

10.

Another attorney representing HARRINGTON, Travis Penn, emailed the undersigned on January 29, also threatening to move for sanctions against the undersigned. His email, and the undersigned's response, are attached are marked as Exhibit "F" to the Affidavit of Maren Chaloupka.

11.

HARRINGTON sued the undersigned in Douglas County District Court on or about February 6, 2026, represented by Mr. Penn and Evan Spencer but not Mr. Duffy. The Complaint in Douglas County District Court Case No. CI26-1046 is attached and marked as Exhibit "G" to the Affidavit of Maren Chaloupka.

12.

Plaintiff asks that this Court acknowledge that in filing the Second Amended Complaint without first seeking leave, the undersigned was attempting to address Rule 11 threats, and was not trying to subvert the Federal Rules. With no Defendant having yet served a first responsive

pleading and the Rule 11 threats remaining active, the interests of justice warrant allowance for Plaintiff to file the Second Amended Complaint.

13.

Through Mr. Duffy, HARRINGTON has advised the undersigned that he opposes Plaintiff's Motion. Counsel for Defendants KRAMER and BAUMBACH have advised that they do not oppose this Motion. The undersigned has asked counsel for JAY SEDHI HOSPITALITY for his position on this Motion, but has not yet received a response.

JANE DOE, Plaintiff,

By:   /s/ Maren Lynn Chaloupka
    Maren Lynn Chaloupka – NSBA #20864
    Chaloupka Law LLC
    1906 Broadway
    P.O. Box 1724
    Scottsbluff, NE  69363-1724
    (308) 270-5091
    mlc@chaloupkalaw.net

    -AND-

    Todd Flynn – NSBA #21945
    Todd Flynn Law Office, P.C., L.L.O.
    P.O. Box 247
    Ainsworth, NE  69210
    (402) 382-3420
    tflynnlaw@threeriver.net

    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of February 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Chinedu I. Igbokwe
Banwo & Igbokwe Law Firm, LLC
3568 Dodge Street, Suite 100
Omaha, NE 68131
nedu@bi-law.com

Justin W. Pritchett
Chandler | Conway, P.C., LLO
1018 Dodge Street, Suite 5
Omaha, NE 68102
justin@chandlerconway.com

Separately, the undersigned hereby certifies that a copy of the foregoing was sent via email to the following, who have indicated that they represent parties to the case, but who have yet to officially enter an appearance:

Michael B. Duffy
Fraser Stryker, PC, LLO
500 Energy Plaza
409 S. 17th Street
Omaha, NE 68102
mduffy@fraserstryker.com

Robert B. Creager
Anderson, Creager & Wittstruck PC LLO
1601 Old Cheney Road
Lincoln, NE 68512
bob@acwlaw.com

_/s/ Maren Lynn Chaloupka_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JANE DOE, a victim of sex trafficking,

                            Plaintiff,

            vs.

SHANE HARRINGTON d/b/a PARADISE
CITY; TIMOTHY JEYS; MELTECH, INC., a
Nebraska corporation; CARL KRAMER, SR.;
JOEY BAUMBACH; and JAY SEDHI
HOSPITALITY LLC, a Nebraska limited
liability corporation,

                            Defendants.

Case No. 7:25-cv-5010


**SECOND AMENDED COMPLAINT**

Jane Doe, a victim of sex trafficking, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states, alleges and avers as follows:

**INTRODUCTION**

1.

This case is brought pursuant to 18 U.S.C. § 1595, the civil remedy provision of the federal Trafficking Victims Protection Act (TVPA), and 18 U.S.C. § 2255. DOE is a young woman who, as a minor child, endured repeated non-consensual sexual acts at the hands of her trafficker and his collaborators. Her date of birth is October 1, 2003. From July 2019 through January 2020, 15-year-old DOE was exploited as, and was expected to "perform" as, a vehicle for the perverse sexual interests of men, to include Defendants herein. "JANE DOE" is a pseudonym, used to protect DOE's privacy and safety in recognition that she is a victim of sex trafficking.

1

2.

All of the men who used and abused DOE were fully aware that their sexual encounters were not a consensual, romantic relationship. For those men, the fact that DOE was there by coercion was "the point" – the fact of her coercion was, itself, sexually titillating. Any of those men could have refrained (or even summoned law enforcement); instead, all proceeded to subject DOE to their personal and perverse sexual preferences.

3.

Some of these Defendants have been prosecuted. DOE has cooperated with all aspects of the criminal litigation, such that the State of Nebraska was able to obtain convictions against some of these Defendants. But no Defendant has yet been held accountable directly to DOE for the harm they inflicted on her. No Defendant has yet compensated DOE for how he exploited her body and her life for his own short-term sexual gratification.

**PARTIES, JURISDICTION AND VENUE**

4.

DOE is a citizen and resident of Red Willow County, Nebraska. Her date of birth is October 1, 2003. She is proceeding under a pseudonym because she is a victim of sexual abuse.

2

5.

Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska.



HARRINGTON was also the principal of Defendant MelTech, Inc., a Nebraska corporation and one of HARRINGTON's many corporate and partnership structures.[1] MELTECH appears to be defunct at this time; but at all times relevant herein, HARRINGTON and MELTECH owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska, in a joint venture with Defendant Timothy Jeys.

6.

Defendant Timothy Jeys ("JEYS") is a citizen and resident of Buffalo County, Nebraska.

---

[1] MELTECH, described by HARRINGTON as an "internet modeling company," started a website designed to monetize prurient interest. *See Harrington v. Nebraska Liquor Control Comm'n*, 2015 WL 505576 (D. Neb. 2015).



At all relevant times, JEYS was engaged in a joint venture with HARRINGTON and MELTECH.

7.

Defendant Carl Kramer, Sr. is a citizen and resident of Oxford, Furnas County, Nebraska.



8.

Defendant Joey Baumbach (aka "UPS Joe") is a citizen and resident of McCook, Red Willow

County, Nebraska.

4



9.

Defendant Jay Sedhi Hospitality LLC ("JSH") was at all relevant times a Nebraska limited liability corporation, domiciled in Box Butte County, Nebraska.

10.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 18 U.S.C. §§ 1595 and 2255. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Furnas and Buffalo Counties, Nebraska.

## FACTUAL BACKGROUND

### *DOE and Billy Quinn*

11.

DOE was raised mostly in Furnas County, Nebraska. Her home life as a child and teenager ranged from chaotic to abusive. She was homeschooled and isolated from both peers in her age group and adults who could have been helpful to her. She did not receive the benefit of exposure to more stable, less dangerous and chaotic ways to live.

12.

By age 14, DOE had run away, and was floating between homes of older siblings and other places she could stay.  When DOE was 15, Billy Quinn, then age 55, offered to DOE that she could stay at a house he owned in Oxford, Nebraska.



13.

DOE knew Quinn.  Some of her siblings had worked for Quinn, and Quinn had previously offered DOE a job.  DOE knew Quinn to be violent.  The first time DOE was alone with Quinn, he sexually assaulted her and held a knife to her throat.

14.

But, DOE was 15 years old, homeless, and totally without resources.  She had no trustworthy family to help her.  She did not have the fund of knowledge that an adult would have, to even ask for help from people who are reliable.  And, DOE was in a county that has limited resources even for those who do know how, and who, to ask for help.  DOE was making survival decisions out of desperation, understandable immaturity, lack of information and trauma.

6

15.

Thus DOE accepted Quinn's offer for housing. The terms and conditions of Quinn's offer were that DOE had to have sex with Quinn.

16.

In July 2019, Quinn began to traffic DOE to other men.

17.

*DOE, Quinn and KRAMER*

In 2019, KRAMER was 48 years old. He owned the Oxford Meat Locker & Gun Store in Oxford, Furnas County, Nebraska. He was a licensed firearms dealer and, per the Oxford Meat Locker & Gun Store website, "a proud member of the Oxford community."

18.

In autumn 2019, Quinn drove DOE to the Oxford Meat Locker & Gun Store after hours.



KRAMER was there. Quinn and KRAMER discussed KRAMER paying $50.00 to have sex with DOE. Quinn lifted up DOE's shirt to show KRAMER her breasts, and invited KRAMER to rub DOE's vagina. Quinn instructed KRAMER on how to contact DOE via Snapchat when he wanted

7

to have sex.

19.

KRAMER did not decline Quinn's invitations, contact law enforcement or do anything else to help DOE.

20.

Instead, between October and December 2019, KRAMER had sex with DOE at Oxford Meat Locker & Gun Store up to forty times, always paying DOE $50.00 after each event. On Quinn's orders, DOE then gave those payments to Quinn, and described the details of each sexual encounter to Quinn.

21.

KRAMER also demanded nude images of DOE. Via Snapchat, DOE complied with KRAMER's demands. KRAMER saved the nude images of DOE for his masturbation needs.

22.

KRAMER knew Quinn was trafficking DOE for money.

23.

KRAMER knew or should have known that DOE had no choice whether to participate.

24.

KRAMER knew or should have known that DOE was participating only under coercion.

25.

KRAMER conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to KRAMER's sexual benefit.

8

26.

### _DOE, Quinn and Joey "UPS Joe" Baumbach_

In August and September 2019, BAUMBACH was working for United Parcel Service as a delivery driver.  His route included a property owned by Quinn in Furnas County.  He was known as "UPS Joe," and was friendly with Quinn.  He was 59 years old.

27.

When BAUMBACH arrived at Quinn's property, Quinn invited him to walk around to the back of the house.  There, DOE was in Quinn's hot tub, on Quinn's orders.  DOE was naked, also on Quinn's orders.

28.

Quinn invited BAUMBACH to "check out my prize," meaning DOE.  BAUMBACH did, exclaiming "wow!"  BAUMBACH did not leave, call law enforcement or do anything to help DOE.  Instead, BAUMBACH used his phone to record a video of DOE in the hot tub.

29.

On a separate occasion, Quinn directed DOE to masturbate for BAUMBACH.  Again, BAUMBACH did not leave, notify law enforcement or do anything to help DOE.  Instead, BAUMBACH not only watched, but he also recorded DOE masturbating on his cell phone on Quinn's order, saving the recording as a keepsake for his own masturbation purposes.

30.

BAUMBACH knew Quinn was trafficking DOE for money.

31.

BAUMBACH knew or should have known that DOE had no choice whether to participate.

9

32.

BAUMBACH knew or should have known that DOE was participating only under coercion.

33.

BAUMBACH conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to BAUMBACH's sexual benefit.

34.

*Joint Venture of HARRINGTON, MELTECH and JEYS*

For many years, HARRINGTON, acting through partnerships and corporations, has done business in the adult entertainment industry.  His businesses have included, *inter alia*:

* MelTech, Inc.;

* H&S Club Omaha, Inc.[2];

* Midwest Girls Club;

* ClubPC, Inc.;

* Club 120, Inc.; and

* Kali Records, Inc.

35.

Through these and other businesses, HARRINGTON has operated multiple adult clubs that offer live nude dancing.  Those clubs have included, *inter alia*:

* Paradise City, outside of Elm Creek;

---

[2]In H&S Club, Inc., HARRINGTON appears to be business partners with his frequent counsel of record (and occasional target of his requests for protection orders, ***see Harrington v. Spencer***, Hall County District Court Case No. 16-761), Evan Spencer.

10

* Club Omaha, in Omaha;

* INFINITY, in Omaha;

* Club Smooth, in Lincoln;

* Hustler Club;

* Midwest Girls Club, in Grand Island; and

* The Shed, in Hastings.

36.

Municipalities have expressed concern that HARRINGTON would "sell" his adult entertainment businesses to friends or family while maintaining control and while continuing to benefit financially from the businesses.[3]

37.

At times when his adult entertainment businesses have been under investigation, HARRINGTON has also represented that he is going to retire, divest from those businesses and move to Florida. He has not retired; he has not divested from his businesses; and while he briefly owned property in Florida, he has continued to reside in Nebraska.

38.

At all relevant times herein, HARRINGTON, MELTECH and JEYS were engaged in a joint venture whereby HARRINGTON and MELTECH owned real estate that included Paradise City, an adult entertainment club outside of Elm Creek, Buffalo County, Nebraska, and/or owned the Paradise City business itself.

---

[3]*See, e.g., Harrington v. Nebraska Liquor Control Commission*, 2015 WL 505576 (D. Neb. 2015).

11



Between a date preceding July 1, 2019 and following August 30, 2022, HARRINGTON and MELTECH served as landlord, principal and/or partner for JEYS to operate the adult club business out of Paradise City.

39.

At all relevant times, HARRINGTON and MELTECH also owned adult clubs in other communities, including in Adams County, Nebraska (nearby Buffalo County). Pursuant to the Joint Venture, HARRINGTON and MELTECH shared dancers with JEYS.

40.

At all relevant times, HARRINGTON and JEYS operated as a Joint Venture whereby HARRINGTON owned the Paradise City property and, on paper, JEYS appeared to have agreed to buy it. During the existence of this Joint Venture, HARRINGTON and JEYS shared revenue in their operation of Paradise City. Notwithstanding the apparent "sale" of Paradise City to JEYS, HARRINGTON maintained equal right of control over the Joint Venture. As the single member of MELTECH and as JEYS' landlord and business partner, HARRINGTON was invested in the success of Paradise City. HARRINGTON shared dancers with JEYS, and he maintained supervision

12

and control of dancers among HARRINGTON's adult entertainment businesses. HARRINGTON and JEYS jointly benefitted from the revenue Paradise City generated.

41.

Together, HARRINGTON and JEYS knowingly conspired to benefit financially from their joint venture. They did so despite that they knew or should have known that JEYS had engaged in sex trafficking, in violation of the Trafficking Victims Protection Act.

*DOE, Quinn, Shane Harrington d/b/a Paradise City and JEYS*

42.

Around Halloween 2019, Quinn drove DOE to Paradise City.

43.

Quinn knew the manager of Paradise City, JEYS. JEYS was an agent and employee of HARRINGTON and MELTECH, acting in the course and scope of his joint venture and in furtherance of the conspiracy with HARRINGTON and MELTECH to aggrandize revenue for the joint venture from sex trafficking activity.

44.

With the knowledge and permission of JEYS, Quinn took DOE into Paradise City and showed her to a construction crew that was patronizing the club. The manager of Paradise City knew that Quinn was in the club for the purpose of "selling" DOE to its patrons, which is what happened: next door to Paradise City was a Rodeway Inn motel, where the Paradise City patrons had sex with DOE under Quinn's supervision.

45.

JEYS facilitated one of the Paradise City dancers performing a sexual act on DOE while

13

Quinn and DOE were there.

46.

JEYS, acting in the course and scope of his employment or agency with and/or his joint venture with HARRINGTON and MELTECH and in furtherance of the civil conspiracy therewith, knew Quinn was trafficking DOE for money.

47.

JEYS, acting in the course and scope of his employment or agency with and/or his joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, knew or should have known that DOE had no choice whether to participate.

48.

JEYS, acting in the course and scope of his employment or agency with and/or his joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, knew or should have known that DOE was participating only under coercion.

49.

JEYS, acting in the course and scope of his employment or agency with and/or joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with a teenage girl.

50.

*DOE, Quinn and Jay Sedhi Hospitality LLC*

In 2019, Jay Sedhi Hospitality LLC ("JSH") owned the Rodeway Inn, located near Paradise City outside of Elm Creek, Buffalo County, Nebraska.

51.

14

When Quinn took DOE to Paradise City to traffic her to patrons of that club, the arrangement was for the patrons to have sex with DOE at the nearby Rodeway Inn.



52.

The employees and agents of the Rodeway Inn were, at all relevant times, acting in the course and scope of their employment with JSH.

53.

Before October 2019, the employees and agents JSH, working at Rodeway Inn, knew or should have known that the Rodeway Inn was used for sex trafficking.

54.

Red flags and direct employee interactions which alerted or should have alerted employees and agents of JSH to sex trafficking activity at the Rodeway Inn included, but was not limited to:

* Proximity to Paradise City;

* Proximity to a truck stop;

* Ability of guests to enter rooms from the parking lot, instead of traveling through a staffed hotel lobby;

* Indicia of commercial sex within the rooms, including used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

15

* Indicia of illegal drug use;

* Excessive requests for sheets and/or housekeeping service;

* Violence and loud disturbances in common and public hotel areas;

* Excessive calls to law enforcement;

* Hotel guest complaints; and/or

* Online reviews indicating the likelihood of sex trafficking and criminal activity at the Rodeway Inn.

55.

Before and during the period that DOE was trafficked at the Rodeway Inn, JSH ignored these signs that its hotel was used for sex trafficking, to its financial benefit.

56.

The financial benefit was that people would pay for rooms at the Rodeway Inn – an otherwise dilapidated, rundown and vermin-infested motel – because they knew they could use the rooms to have sex with victims of sex trafficking, without interference by hotel staff.

57.

JSH, acting through its agents and employees, participated in a venture with Quinn, by tacit agreement and/or pattern of conduct, by which Quinn could traffic DOE and JSH would receive the benefit of customers paying for rooms where they could have sex with DOE.

58.

There was a continuous business relationship between JSH and sex traffickers, including but not limited to Quinn. By that relationship, sex traffickers, including Quinn, knew that they could traffic captive sex workers like DOE at the Rodeway Inn without interference from hotel staff.

16

59.

JSH failed to enact any policies or training for its employees or agents to prevent sex trafficking at the Rodeway Inn. This failure was, in fact, a choice designed to keep rooms rented by people who wanted to have sex with captive sex workers – because the hotel was otherwise an unattractive lodging option for travelers without an interest in criminal activity.

60.

At the Rodeway Inn, Quinn took DOE from room to room, presenting DOE for commercial sexual activity to the paying guests of Rodeway Inn. DOE was coerced into sexual intercourse over and over, ending only when one of the guests forced her into anal sex and she fled from the room.

*The criminal investigation*

61.

On January 19, 2020, DOE revealed to a brother-in-law the abuse she had been enduring at the hands of Quinn and his co-conspirators, including these Defendants.

62.

DOE's brother-in-law notified the Furnas County Sheriff's Office, which in turn initiated a criminal investigation. The investigation was taken over by the Office of the Nebraska Attorney General. The Attorney General ultimately obtained convictions against Quinn, BAUMBACH, KRAMER, BROOKS and multiple other men who had sex with DOE for money.

**FIRST CAUSE OF ACTION**

**18 U.S.C. § 1595 and/or 18 U.S.C. § 2255**
**KRAMER AND BAUMBACH**

17

63.

KRAMER patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with KRAMER.

64.

KRAMER patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with KRAMER.

65.

BAUMBACH patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with BAUMBACH.

66.

BAUMBACH patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with BAUMBACH.

67.

DOE suffered and continues to suffer damage as a result of KRAMER's and BAUMBACH's direct participation in her involuntary trafficking.

## SECOND CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### HARRINGTON, MELTECH and JEYS

68.

Doing business as Paradise City, HARRINGTON, MELTECH and JEYS participated in the

18

trafficking of DOE in violation of 18 U.S.C. § 1591.

69.

Employees and agents of Paradise City patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

70.

Employees and agents of Paradise City patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

72.

HARRINGTON, MELTECH and JEYS, doing business as Paradise City, knew or should have known that Paradise City violated 18 U.S.C. § 1591 with respect to DOE.

73.

Paradise City nonetheless knowingly participated in this venture, and knowingly benefitted from that participation.

74.

DOE suffered and continues to suffer damage as a result of the role of Paradise City and its owners/operators in her involuntary trafficking.

### THIRD CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255 - CONSPIRACY
### HARRINGTON, MELTECH and JEYS

19

75.

HARRINGTON, MELTECH and JEYS acted in concert, intentionally, in order to operate Paradise City in a manner that would aggrandize revenue for their Joint Venture by enhancing the prurience of the activities in, and available to patrons from, Paradise City.

76.

HARRINGTON employed management for his clubs who have taken numerous classes in human trafficking within the adult entertainment industry, whose knowledge from such classes is imputed to HARRINGTON.

77.

HARRINGTON, MELTECH and JEYS knew that a young female entering an adult entertainment club with an older man may be a victim of trafficking, and that the older man may be her trafficker.

78.

HARRINGTON, MELTECH and JEYS knew that allowing sexual contact among dancers, or between dancers and patrons, increases the potential that would-be traffickers will visit adult entertainment clubs with the women and girls they are trafficking.

79.

HARRINGTON, MELTECH and JEYS knew that operating an adult entertainment club next to an inexpensive motel increases the potential that would-be traffickers will visit the club with the women and girls they are trafficking.

80.

HARRINGTON, MELTECH and JEYS allowed sexual contact among dancers, and between

20

dancers and patrons, at Club Paradise.

81.

HARRINGTON, MELTECH and JEYS knew that Club Paradise was located within a short distance of the Rodeway Inn, an inexpensive motel.

82.

When JEYS observed Quinn with DOE at Club Paradise, he knew or should have known that DOE, a teenager, was there because Quinn was her trafficker.

83.

JEYS took zero reasonable measures to inquire about DOE's safety or to protect DOE.

84.

Instead of taking reasonable measures to protect DOE, JEYS instead permitted Club Paradise dancers to perform a sexual act on DOE in the presence of Club Paradise's patrons.

85.

Instead of taking reasonable measures to protect DOE, JEYS instead permitted Quinn to offer DOE to Club Paradise's patrons for sexual intercourse at the nearby Rodeway Inn.

86.

JEYS made these decisions because he, HARRINGTON and MELTECH shared a common purpose of aggrandizing revenue at Club Paradise through offering patrons an enhanced prurient experience, to include watching dancers perform sex acts on a teenage girl and learning from her trafficker that that teenage girl was available for sexual intercourse for money at the Rodeway Inn.

87.

JEYS, acting in furtherance of the Joint Venture with HARRINGTON and MELTECH,

21

actively contributed to DOE's damage by subjecting DOE to a sex act by Paradise City dancers , and by enabling QUINN to offer DOE's body to Paradise City's patrons.

88.

This constitutes a civil conspiracy and actions which constitute aiding and abetting.

89.

By operating Paradise City in a way that they knew attracted sex traffickers such as Quinn, and by allowing Quinn to present DOE at Paradise City for a public sex act performed by a dancer and for sexual intercourse for money, JEYS, HARRINGTON and MELTECH accomplished by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means, to wit: the aggrandizement of revenue through illegal sex trafficking.

90.

DOE suffered damages as a result of HARRINGTON, MELTECH and JEY's Joint Venture and civil conspiracy to enable and encourage Quinn's trafficking of DOE.

### FOURTH CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### JAY SEDHI HOSPITALITY

91.

Doing business as Rodeway Inn, Jay Sedhi Hospitality LLC ("JSH") participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

92.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act

22

with them.

93.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

94.

Employees and agents of Rodeway Inn on this occasion were familiar with Quinn.

95.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn was taking a young woman from room to room was so that he could present her for commercial sexual activity to its guests.

96.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn, who himself was not a hotel guest, was loitering on its property, outside of the hotel rooms, was because he was waiting for Rodeway Inn guests to finish their commercial sexual activity with DOE.

97.

JSH, doing business as Rodeway Inn, acting through its employees and agents, knew or should have known that Rodeway Inn and its guests violated 18 U.S.C. § 1591 with respect to DOE by allowing Quinn to present DOE to its guests for commercial sexual activity.

98.

JSH, doing business as Rodeway Inn, acting through its agents and employees, nonetheless

23

participated in this venture, and knowingly benefitted from that participation.

99.

DOE suffered and continues to suffer damage as a result of JSH's participation in her involuntary trafficking.

## DAMAGES

100.

For his own financial gain and sexual perversions, Billy Quinn forced DOE – a teenager whom he found in a wounded, desperate and vulnerable state – to endure months of brutal sexual, physical and emotional abuse.  But Quinn did not act alone: each Defendant in this case played an active and knowing role in DOE's torture.

101.

Because of the selfishness of these Defendants, DOE experienced being sold for $50.00 for the sexual pleasure of strange adult men, over and over and over for months.  She received, and internalized, the inescapable messages that:

* she was nothing more than an orifice with a person around it;

* she had no rights, no agency, no past, no future and no soul; and

* she was so lacking in value as a human being that it did not matter if they hurt DOE or even if they killed her.

102.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity.

24

103.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead adding to her sexual and emotional victimization.

104.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their perverse sexual needs.

105.

None of those messages, and none of those recognitions, faded away simply because law enforcement finally apprehended Quinn.  These are bells that cannot be un-rung.

**PUNITIVE DAMAGES**

106.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants as alleged herein.  The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including DOE.  Defendants committed the acts and omissions alleged herein and subjected DOE to brutal and inhumane treatment.  Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

107.

The recovery of punitive damages is permitted under 18 U.S.C. § 1595 and 18 U.S.C. § 2255,

25

and is appropriate in this case. This instance of reckless and callous indifference to DOE's life and safety should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

108.

As a result of Defendants' actions as alleged herein, DOE was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.    For compensatory damages in an amount to be specifically proven at trial;

2.    For punitive damages in an amount to be determined at trial;

3.    For reasonable attorney's fees and the costs of litigation;

4.    For post-judgment interest at the maximum legal rate;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court deems just and proper.

JANE DOE, Plaintiff,


By:   /s/ Maren Lynn Chaloupka
      Maren Lynn Chaloupka – NSBA #20864
      Chaloupka Law LLC
      1906 Broadway
      P.O. Box 1724
      Scottsbluff, Nebraska  69363-1724
      (308) 270-5091
      mlc@chaloupkalaw.net

      -AND-

26

Todd Flynn – NSBA #21945
Todd Flynn Law Office, P.C., L.L.O.
P.O. Box 247
Ainsworth, Nebraska 69210
(402) 382-3420
tflynnlaw@threeriver.net

*Attorneys for Plaintiff*