IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE HARRINGTON d/b/a PARADISE CITY; CARL KRAMER, SR.; JOEY BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation,<br><br>Defendants. | Case No. 7:25-cv-5010<br><br><br>**AFFIDAVIT OF<br>MAREN LYNN CHALOUPKA** |

Maren Lynn Chaloupka, being first duly sworn on oath, testifies as follows:

1.

My name is Maren Chaloupka.  I am one of Plaintiff's counsel in the above-captioned case. The matters to which I am testifying herein are matters of my personal knowledge.  This Affidavit is submitted in support of Plaintiff's Response to Order to Show Cause and Motion for Leave to File Second Amended Complaint and for no other reasons.

2.

Together with my co-counsel, Todd Flynn, I filed this case on December 8, 2025.  We did not immediately request summonses.

3.

On December 15, 2025, Michael Duffy emailed me a letter and a "Confidential Sales Contract." In that letter, Mr. Duffy threatened me with Rule 11 sanctions on behalf of HARRINGTON. That letter, and the "Confidential Sales Contract," are attached to this Affidavit

1

and marked as Exhibit "A."

4.

I responded with correspondence dated December 22, 2025, attached to this Affidavit and marked as Exhibit "B."

5.

On December 24, 2025, we filed an Amended Complaint, wherein I corrected the name of Defendant BAUMBACH in the caption and the text of the Amended Complaint (from "Joseph Baumbaugh" to "Joey Baumbach").

6.

Mr. Duffy wrote to me again on January 13. His letter, and draft Rule 11 motion, are attached to this Affidavit and marked as Exhibit "C."

7.

Mr. Flynn and I reviewed what is now marked as Exhibit "C" and continued our research, to ascertain that we were not proceeding in violation of Rule 11. On January 21, 2026, I sent Mr. Duffy the correspondence that is attached to this Affidavit and marked as Exhibit "D," advising Mr. Duffy that we intended to amend the Complaint to address the concerns Mr. Duffy had expressed.

8.

On January 23, 2026, I sent Mr. Duffy the correspondence that is attached to this Affidavit and marked as Exhibit "E," and the Second Amended Complaint. I filed the Second Amended Complaint that day. By that time, no Defendant had entered an appearance in this matter.

9.

I was mistaken in my belief that because no Defendant had filed a first responsive pleading,

2

I could amend the Complaint again without first seeking leave from this Court. I should have reviewed Rule 15 and, having now done so, acknowledges that my belief was wrong.

10.

Another attorney representing HARRINGTON, Travis Penn, emailed me on January 29, also threatening to move for sanctions against the undersigned. His email, and my response, are attached to this Affidavit and is marked as Exhibit "F."

11.

HARRINGTON sued me and Mr. Flynn in Douglas County District Court on or about February 6, 2026, represented by Mr. Penn and Evan Spencer but not Mr. Duffy. The Complaint in Douglas County District Court Case No. CI 26-1046 is attached to this Affidavit and marked as Exhibit "G."

FURTHER AFFIANT SAYETH NOT.

_____
Maren Lynn Chaloupka

Subscribed and sworn to before me on this 17ᵀᴴ day of February 2026.


_____
Notary Public

My commission expires:

> State of Nebraska – General Notary
> WM. RILEY PLATT
> My Commission Expires
> November 2, 2028

3



Michael B. Duffy
ATTORNEY

402.978.5332
mduffy@fraserstryker.com
**fraserstryker.com**

December 15, 2025

**VIA EMAIL:**
Maren Lynn Chaloupka
1906 Broadway
PO Box 1724
Scottsbluff, NE 69363-1724
T: (308) 270-5091
F: (308) 270-5105
www.chaloupkalaw.net
mlc@chaloupkalaw.net

> RE:     *Jane Doe v. Shane Harrington d/b/a Paradise City et al*; 7:25-cv-05010

Dear Maren:

My firm represents Shane Harrington with regard to the lawsuit filed by Jane Doe in the District of Nebraska entitled *Jane Doe v. Shane Harrington d/b/a Paradise City et al*; 7:25-cv-05010-RFR-RCC ("The Lawsuit"). The purpose of this letter is to inform you that Mr. Harrington is not the correct party in this case and to request that he be dismissed from the Lawsuit.

According to the Complaint, your client alleges that Mr. Harrington was the owner/operator of the company doing business as Paradise City at 1780 Hwy. US-183, Elm Creek, Nebraska during the time period between July 2019 and January 2020.

As shown in the attached sales contract, however, Mr. Harrington sold the business in March 2018 to Tim Jeys. Specifically, Mr. Harrington and Meltech transferred ownership of the Paradise City business to Mr. Jeys on or about March 7, 2018. Although Mr. Jeys defaulted on this agreement in May 2020, Mr. Harrington did not own or operate the business during the times alleged in the lawsuit.

Mr. Harrington is therefore not a proper party to the lawsuit. We request that you dismiss him from the case within ten (10) days. Should you have any questions about this, then please call me as soon as possible.



**Fraser Stryker PC LLO**

500 Energy Plaza, 409 South 17th Street, Omaha, NE  68102  —  TEL: 402.341.6000  —  FAX: 402.341.8290

December 15, 2025
Page 2

Thank you.

Michael B. Duffy
FOR THE FIRM

MBD:ajb
#3497941v1

# CONFIDENTIAL SALES CONTRACT

It is hereby stipulated and agreed between Shane Harrington and MelTech, Inc. (collectively referred to as "Seller") and Tim Jeys (referred to as "Buyer"), that Seller agrees to sell the business Paradise City to Buyer pursuant to the following terms and conditions:

1) Seller agrees to accept $190,000 from Buyer as total consideration to purchase the business Paradise City located at 1780 U.S. 183, Elm Creek, Nebraska 68836 (excluding ownership of the property and business).

2) Buyer shall pay $100,000 to Seller by cashier's check on the date of sale.

3) Buyer shall pay all utilities, well water fees, music licensing fees, and shall obtain at least $1 million in liability and fire/disaster insurance for Paradise City at all times during operation.

4) Buyer shall pay $90,000 in installments, commencing six (6) months after the date of sale and concluding within eighteen (18) months after the date of sale to Seller.

5) Monthly installment payments shall be a minimum of $1,000 per month by Buyer to Seller.

6) Commencing thirty (30) days after date of sale, Buyer shall commence paying monthly rent of $1,500 per month (over and above installment payments) to Seller in perpetuity until Paradise City is purchased by Buyer or ownership is transferred to Seller or a third party.

7) Buyer understands that Seller will continue to operate Midwest Girls Club in Hastings, Nebraska, which may pose competition to Paradise City.

8) Seller and Buyer shall act in good faith with regard to the sharing of the entertainers at Paradise City and Midwest Girls Club in Hastings.

9) Buyer has the option to purchase the Paradise City property and building for $105,000, after the entire $190,000 purchase price has been paid.

10) If the building and property has not been purchased by Buyer within three (3) years, Seller may increase rent up to 10% per year.

11) Buyer agrees to follow all Buffalo County, Nebraska State, and Federal laws and ordinances regarding the ownership and operation of Paradise City.

12) In the event Buyer breaches this contract by failing to make payments in accordance with this agreement or violates Federal law or laws of the State of Nebraska or Buffalo County, Seller agrees to voluntarily relinquish and return ownership and control of Paradise City to Seller after receiving at least thirty (30) days written notice.

STATE OF NEBRASKA ............................ )
                                             )SS:
COUNTY OF _Lancaster_ ...................... )

Acknowledged before me a notary public this __7__ day of March, 2018, by Shane Harrington.

GENERAL NOTARY - State of Nebraska
JACI L KERNS-LOY
My Comm. Exp. January 29, 2022

_____
Shane Harrington

Notary Public          My commission expires: _____Jan 29 2022_____


STATE OF NEBRASKA ............................ )
                                             )SS:
COUNTY OF _Lancaster_ ...................... )

Acknowledged before me a notary public this __7__ day of March, 2018,
by Shane Harrington on behalf of and as President of MelTech, Inc, a Nebraska corporation.

GENERAL NOTARY - State of Nebraska
JACI L KERNS-LOY
My Comm. Exp. January 29, 2022

_____
Shane Harrington

Notary Public          My commission expires: _____Jan 29 2022_____


STATE OF NEBRASKA ............................ )
                                             )SS:
COUNTY OF _Lancaster_ ...................... )

Acknowledged before me a notary public this __5__ day of March, 2018, by Tim Jeys.

GENERAL NOTARY - State of Nebraska
JACI L KERNS-LOY
My Comm. Exp. January 29, 2022

_____
Tim Jeys

Notary Public          My commission expires: _____Jan 29 2022_____


(Page 2 of 2)



Maren Lynn Chaloupka
Attorney at Law

Riley Platt
Paralegal/Office Manager

Robert P. Chaloupka
(1943-2009)

Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE  69363-1724

Phone:  (308) 270-5091
Facsimile:  (308) 270-5105

www.chaloupkalaw.net

December 22, 2025

<u>VIA EMAIL ONLY</u>
Michael B. Duffy
Fraser Stryker, PC, LLO
500 Energy Plz
409 S 17th St
Omaha, NE  68102

RE:     *Jane Doe v. Shane Harrington d/b/a Paradise City, et al.*

Dear Mike:

I've reviewed your request that we dismiss Mr. Harrington.  I can't agree to this based just on the documents you've provided.

I can think of additional documentation that might create greater clarity for the ownership of Paradise City during the dates in question, to include:

- Any documents filed in Buffalo County, Nebraska illustrating transfers between Mr. Jey and Mr. Harrington, including but not limited to any Memo of Contract, First Rights of Refusal or Option to Purchase, Mortgages, Deeds of Trust or Deeds of Reconveyance and any 521 Transfer forms completed for filing purposes;

- Payments, transfer terms, Schedule E disclosures and 1099's for the joint endeavor of sharing entertainers with Mr. Jey;

- Tax returns showing evidence of payments to Mr. Harrington by Mr. Jey (or lack thereof);

- Any documentation of alleged actual or potential default by Mr. Jey, including law violations;





EXHIBIT
B

- The declarations pages for all polices of insurance covering Paradise City that were in effect during the dates alleged in the Complaint, including identification of the licensed insurance agent(s) who sold the policies;

- All title commitments associated with the alleged transfer of ownership from Mr. Harrington to Mr. Jey;

- All Owners policies and Lenders policies associated with the alleged transfer of ownership from Mr. Harrington to Mr. Jey;

- All closing statements for the alleged transfer of ownership from Mr. Harrington to Mr. Jey, including identification of the closing agent.

If you would like to forward these documents now, I'll take a look at them. When the Rule 26(f) plan is approved and we move into discovery, I will formalize this in Interrogatories and Requests for Production.

Please let me know whether you will accept service of process on behalf of Mr. Harrington.

Very truly yours,

Maren Lynn Chaloupka

MLC:rp

cc:    Todd Flynn





**Michael B. Duffy**
ATTORNEY
402.978.5332
mduffy@fraserstryker.com
**fraserstryker.com**

Janaury 13, 2026

<u>**VIA EMAIL**</u>:
Maren Lynn Chaloupka
1906 Broadway
PO Box 1724
Scottsbluff, NE 69363-1724
T: (308) 270-5091
F: (308) 270-5105
mlc@chaloupkalaw.net

     RE:    *Jane Doe v. Shane Harrington d/b/a Paradise City et al*; 7:25-cv-05010

Dear Maren:

     As you know, our firm represents Shane Harrington in the above-referenced lawsuit. We previously wrote to you informally on December 15, 2025 and January 6, 2026 in an effort to obtain a voluntary dismissal of Mr. Harrington. We asked that you respond to our most recent letter by January 9, 2026. But we did not receive a response from you. Based on the allegations in the Complaint and the facts known to you, we have determined the Complaint violates Fed. R. Civ. P. 11.

     Rule 11 provides that, when a party presents the Court with a pleading, such as a complaint, you are certifying to the best of your knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that the Complaint:

    (1)     is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

     After review of the Complaint, our previous correspondence, the documents we provided you, and the publicly available information, we do not believe the factual contentions set forth in the Complaint have evidentiary support. Namely, we do not believe you have evidentiary support



EXHIBIT
**C**

Janaury 13, 2026
Page 2

for, including but not limited to, Paragraphs 5, 33, 34, 35, 36, 37, 38, 39, 40, 59, 62, 63, 80, and
81 of the Complaint.

In these paragraphs, you allege that Mr. Harrington owned the Paradise City business
during the July 2019 to January 2020 time period. Likewise, in the paragraphs referenced above,
you allege that Mr. Harrington employed Mr. Tim Jeys during the same time period.

As shown in our previous letters to you, these allegations are completely false. Mr.
Harrington sold the business to Mr. Jeys in March 2018. Mr. Harrington was not the owner of the
Paradise City business during the time period alleged in the Complaint. You therefore do not
have a good faith basis to support the allegations in the Complaint against Mr. Harrington. There
is also no basis to believe that your allegations will be supported by any evidence obtained in
discovery.

Mr. Harrington and the Firm demand that you immediately file an Amended Complaint
withdrawing all claims and allegations you have asserted against them. Our review of the
Complaint shows you are exposed to a serious risk of sanctions if you fail to do so. Should you
not do so, we will file the attached Motion twenty-one (21) days from the date of this letter if we
do not receive a satisfactory response from you.

Sincerely,

Michael B. Duffy
FOR THE FIRM

MBD:ajb

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE DOE, | ) | CASE NO.  7:25-CV-05010-RFR-RCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT SHANE HARRINGTON'S** |
| | ) | **MOTION FOR** |
| SHANE HARRINGTON d/b/a PARADISE | ) | **RULE 11 SANCTIONS** |
| CITY; CARL KRAMER, SR.; JOSEPH | ) | |
| BAUMBACH; and JAY SEDHI | ) | |
| HOSPITALITY LLC, a Nebraska limited | ) | |
| liability corporation,, | ) | |

Defendants.

COMES NOW Defendant Shane Harrington ("Harrington") and, pursuant to Fed. R. Civ. P. 11, move the Court for an Order sanctioning counsel for Plaintiff, Maren Lynn Chaloupka and Todd Flynn. In support of this Motion, Harrington states as follows:

1.    On December 18, 2025, Plaintiff filed a Complaint alleging one cause of action against Harrington for violations of the Trafficking Victims Protection Act ("TVPA") and 18 U.S.C. § 2255. (Filing No. 1, Complaint, ¶¶ 59-64).

2.    At the outset, it is important to note that the Complaint does <u>not</u> allege that Harrington had any actual knowledge that Plaintiff was the victim of human trafficking. Instead, Plaintiff's entire theory of liability against Harrington rests on the allegation that Harrington was the owner of and doing business as "Paradise City" during the July 2019 to January 2020 time period.

3.    But Plaintiff's counsel has failed to perform the reasonable inquiry that was required of them, which would have revealed that Plaintiff's claims are baseless and utterly frivolous.

4.      Specifically, Harrington sold the Paradise City business in March 2018 to Tim Jeys and was neither the owner of Paradise City nor the employer of Mr. Jeys during the relevant time frame. (*See* Exhibits).

5.      Plaintiff's claim against Harrington in Count 2 is therefore unwarranted by existing law and/or a non-frivolous argument for the extension, modification or reversal of existing law and the factual contentions contained in Plaintiff's Complaint have no evidentiary support.

6.      Plaintiffs' claim was presented and continues to be pursued for the improper purpose of misusing the provisions of the TVPA to obtain monetary gain without justification.

7.      Plaintiff's continued pursuit of her claim and attempt to use the TVPA for personal monetary benefit in the complete absence of any evidence are a blatant violation of Fed. R. Civ. P. 11.

8.      To deter repetition of Plaintiff's conduct or comparable conduct by others similarly situated, this conduct should be subject to appropriate sanctions.

9.      Harrington has complied with the provisions of Rule 11(c)(2) of the Federal Rules of Civil Procedure by serving a copy of this Motion, on or about January 13, 2026, before presenting this Motion to this Court. (Ex. 1, Affidavit of Michael B. Duffy., ¶ _).

10.      In further support of this Motion, Harrington submits a Brief and an Index of Evidence.

WHEREFORE, Defendant Shane Harrington respectfully requests that this Court enter an Order imposing Rule 11 sanctions to deter repetition of Plaintiff's conduct or comparable conduct by others similarly situated, including but not limited to:

(A)      Costs and reasonable attorneys' fees incurred in defending against this action;

(B)      Dismissal of this lawsuit against Harrington in its entirety, with prejudice; and

(C)      Any other sanctions imposed against Plaintiff which the Court deems fair and just.

SHANE HARRINGTON d/b/a/ PARADISE CITY,
Defendant.

By: _____

Michael B. Duffy #27529
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102-2663
(402) 341-6000
mduffy@fraserstryker.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this ___ day of ____, 2026, via electronic mail and United States first class mail, postage prepaid upon the following:

Maren Lynn Chaloupka – NSBA #20864
Chaloupka Law LLC
P.O. Box 1724
1906 Broadway
Scottsbluff, Nebraska 69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

Todd Flynn – NSBA #15866
Flynn Law Office
P.O. Box 247
Ainsworth, Nebraska 69210
(402) 382-3420
tflynnlaw@threeriver.net

_____



Maren Lynn Chaloupka
Attorney at Law

Riley Platt
Paralegal/Office Manager

Robert P. Chaloupka
(1943-2009)

Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE 69363-1724

Phone: (308) 270-5091
Facsimile: (308) 270-5105

www.chaloupkalaw.net

January 21, 2026

<u>Via Email Only</u>
Michael B. Duffy
Fraser Stryker, PC, LLO
500 Energy Plz
409 S 17th St
Omaha, NE 68102

      RE:    *Jane Doe v. Shane Harrington d/b/a Paradise City, et al.*

Dear Mr. Duffy:

      I did respond to your December 15 letter, on December 22. You are correct that I did not respond to your January 6 letter before January 9.

      I cannot agree to dismiss Mr. Harrington, with or without prejudice, without exploring in discovery whether Mr. Harrington retained ownership and control of Paradise City at the times identified in the Amended Complaint. The documents that you provided do not answer those questions. The documents you provided have raised more questions than answers. It appears that Mr. Harrington and Mr. Jeys were business partners. It also appears that Mr. Harrington did not sell the Paradise City building until 2022.

      In lieu of dismissing your client, I am amending the Complaint to add Mr. Jeys as a co-defendant, as well as MelTech, Inc., and to clarify the allegations as to all three. I will send you a copy, most likely before the end of this week.

      Very truly yours,

Maren Lynn Chaloupka





EXHIBIT
D



Maren Lynn Chaloupka
Attorney at Law

Riley Platt
Paralegal/Office Manager

Robert P. Chaloupka
(1943-2009)

Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE  69363-1724

Phone:  (308) 270-5091
Facsimile:  (308) 270-5105

www.chaloupkalaw.net

January 23, 2026

_Via Email Only_
Michael B. Duffy
Fraser Stryker, PC, LLO
500 Energy Plz
409 S 17th St
Omaha, NE  68102

RE:    *Jane Doe v. Shane Harrington d/b/a Paradise City, et al.*

Dear Mike:

With this letter, I am attaching the Second Amended Complaint for this matter.  We have electronically filed it today.

Please confirm that you are withdrawing your Rule 11 threat.  Please also advise whether you will accept service of process on behalf of your client.

Very truly yours,

Maren Lynn Chaloupka

Enclosure

cc:    Todd Flynn





## Maren Chaloupka

| | |
|---|---|
| **From:** | Maren Chaloupka |
| **Sent:** | Thursday, January 29, 2026 7:54 AM |
| **To:** | 'Travis Penn'; tflynnlaw@threeriver.net |
| **Subject:** | RE: Concerning Shane Harrington |

Thank you for your contact and threat. You are the second attorney who has advised me that you are representing Mr. Harrington. Please clarify whether I should respond to you or to Mr. Duffy.

**From:** Travis Penn <travis.penn@gmail.com>
**Sent:** Wednesday, January 28, 2026 3:49 PM
**To:** Maren Chaloupka <mlc@chaloupkalaw.net>; tflynnlaw@threeriver.net
**Subject:** Concerning Shane Harrington

Dear Ms. Chaloupka and Mr. Flynn:

I represent Shane Harrington for the purpose of investigating a potential Abuse of Process cause of action arising out of the recent lawsuit against him in which you represent Plaintiff Jane Doe. My client, Mr. Harrington, directed me to research and possibly file a lawsuit against yourselves and your firms based on the assertion that the bases on which Mr. Harrington was made a defendant are so devoid of evidence that he was made a defendant with the ulterior motive of a fishing expedition to increase lucrativity. After receiving evidence that he did not own Paradise City, you amended to allege the transfer was only for appearances for liability protection, and Mr. Harrington still owned and/or managed Paradise City. Mr. Harrington strongly denies this is the case, and I respectfully request that you provide evidence of this alleged Joint Venture, Partnership, or Conspiracy. Indeed, when I look at the circumstances of the transfer, it has no appearance of this – none of the obvious methods to shield from liability are present such as having the business owned by a corporation or LLC; the transfer was widely publicized; and, a meaningful transfer of money was made, not a nominal transfer that might be made if the new owner was just a proxy.

Please supplement the evidential basis for your assertions concerning Mr. Harrington's involvement in Paradise City by February 4, or we will strongly consider filing such a cause of action and/or directing the counsel representing Mr. Harrington as a defendant to file a Rule 11 motion for sanctions.

Sincerely,

Travis Penn
Penn Law Firm LLC
125 South 93rd Avenue
Omaha, Nebraska 68114
402-880-4814



EXHIBIT

**F**

1

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI260001046
Transaction ID: 0024539999
Filed Date: 02/06/2026 12:13:13 PM CST

## DISTRICT COURT OF DOUGLAS COUNTY NEBRASKA

| | |
|---|---|
| SHANE HARRINGTON, | **Case No.** |
| Plaintiff, | |
| versus, | **COMPLAINT** |
| MAREN LYNN CHALOUPKA, CHALOUPKA LAW, LLC, TODD FLYNN, and FLYNN LAW OFFICE, | |
| Defendants. | |

## INTRODUCTION

This lawsuit for Abuse of Process against Defendants Maren Lynn Chaloupka ("Chaloupka"), Chaloupka Law LLC ("Chaloupka Law"), Todd Flynn ("Flynn"), and Flynn Law Office ("Flynn Law") arises out of their client Jane Doe's December 8, 2025, lawsuit **(Exhibit "A")**, amended complaint of December 24, 2025 **(Exhibit "B")**, and second amended complaint of January 23, 2026 **(Exhibit "C")** filed against Plaintiff Shane Harrington in which Jane Doe baselessly and recklessly, through her attorneys (current-Defendants), asserts Plaintiff Harrington participated in her being sex trafficked at a club, Paradise City on one night around Halloween in 2019. Plaintiff Harrington became a Defendant in that lawsuit in part due to previously owning Paradise City as well as previously having an employer relationship with another Defendant in that lawsuit; but there is no evidence Plaintiff Harrington owned Paradise City or was in that employer relationship at the time of the relevant events or that he was involved in a "joint venture" or "partnership" with the owner of Paradise City, Tim Jeys. It is clear Defendants' lawsuit against Plaintiff Harrington is not a genuine cause of action but brought with the ulterior motive of a fishing expedition to increase lucrativeness fueled by the joint and several liability and extreme possible judgments mandated by their cause of action.

**EXHIBIT G**

1

Plaintiff Harrington, through his attorneys for that lawsuit, Fraser Stryker, provided clear and convincing evidence to Defendants Chaloupka and Flynn that he had sold Paradise City and was not in the employer relationship with the subsequent owner at relevant times; eventually, without communication or exchange, current-Defendants filed a 2nd Amended Complaint in which they changed their basis for Plaintiff Harrington's liability to a theory based on the assertion that he secretly kept true control of Paradise City, or was in a "joint venture", despite the sale of Paradise City. This assertion is equally baseless, and time was provided for current-Defendants to provide any basis for their assertions, which they have not. It is clear they were making baseless, speculative assertions to keep their fishing expedition afloat.

Defendants' vexatious lawsuit against Plaintiff Harrington has been published to hundreds of thousands of people in Nebraska and throughout the United States. The 21-page lawsuit refers to Plaintiff and/or his dissolved corporation Meltech, Inc. by name or as one of the "Defendants" in 20 of its 82 paragraphs. Every relevant assertion in their lawsuit is false, because they all revolve around the assertion that Plaintiff Harrington either directly owned Club Paradise at the relevant times or was the de-facto owner or manager through Tim Jeys.

Plaintiff Harrington has worked in the adult entertainment industry in Nebraska for over 25 years and maintained his businesses impeccably, so Defendants' lawsuit severely damaged his reputation and businesses. The story was widely reported including the front page of Lincoln Journal Star, the Omaha World-Herald, Grand Island Independent, Kearney Hub, Nebraska.TV, other media outlets and social media including Facebook and X. Plaintiff Harrington has suffered significant loss of value to his assets from the stigma of Defendants' lawsuit, including the loss of specific business dealings.

The plaintiff in Defendants' lawsuit, Jane Doe, may have basis to her allegations against one or more of the other defendants in her lawsuit, based on police reports, but the claims against

2

current Plaintiff Harrington and his business Meltech, Inc., are false, baseless, reckless, and clearly made with the ulterior motive of increasing lucrativeness since the other defendants, other than current-Plaintiff Harrington, clearly have little to offer if a judgment is obtained. Plaintiff Harrington and Meltech, Inc. were out of possession landowners of Paradise City at the time of occurrence, and this was made clear through a history of transactions and news reports concerning Paradise City.

Defendants' vexatious federal sex trafficking lawsuit knowingly, recklessly, and outrageously named current-Plaintiff Harrington as a Defendant with clear ulterior motive to increase their lawsuit's potential for lucrativeness, because it is obvious and objectively deducible that naming Plaintiff Harrington as a Defendant would: (1) extort money from Plaintiff Harrington by the sheer gravity and nature that a sex trafficking lawsuit would impose on Plaintiff Harrington's self and businesses that he would need to quickly distance himself by settlement or other monetary means; and/or (2) extort money from the 2019 insurance companies for Shane Harrington and Meltech, Inc., because they would risk potential of defending such a lawsuit to completion may outweigh settling despite the baseless evidence; and/or (3) possibly acquire a judgment through trial due to the highly emotional accusations causing a jury to find any defendant liable despite a lack of evidence. Therefore, Defendants' lawsuit constitutes an Abuse of Process under Nebraska law. As a result of the foregoing, Plaintiff has suffered actual damages in excess of $5 million.

## STATEMENT OF FACTS

1) On March 7, 2018, Plaintiff Harrington sold Paradise City gentlemen's club located at 1780 HWY 183, in Elm Creek, Nebraska to Timmy Jeys, one of the primary Defendants in the current Defendants' Jane Doe lawsuit.

2) The sale was reported by local news agencies in articles and videos. These reports are easy to find online and were forwarded to Jane Doe's attorneys.

3

3) The sale was also reported on Plaintiff Harrington's social media as well as others' social media at the time that it happened, and it is visible to public searches.

4) Jeys had worked at Paradise City for many years under multiple owners, and Plaintiffs never received a complaint about him.

5) Until current Defendants filed their lawsuit, Plaintiff Harrington was entirely unaware of the alleged events that happened to Jane Doe at Paradise City, because this happened when Jeys owned Paradise City.

6) On December 8, 2025, Jane Doe, through her attorneys Defendant Chaloupka and Defendant Flynn, filed a lawsuit against Plaintiff Harrington and others seeking damages for her being sex trafficked in part at Paradise City by Jeys and others in 2019.

7) This lawsuit mentions Plaintiff Harrington in 20 of its 82 paragraphs, asserting primarily that current Plaintiff Harrington "*At all relevant times, he owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska.*" and, "*Timmy Jeys; the manager was an agent and employee of Harrington, acting in the course and scope of his employment at Paradise City.*" The complaint (See **Exhibit "A"**) sought liability from its defendants, including current Plaintiff Harrington, based on these false assertions.

8) Plaintiff Harrington did not own or do business as Paradise City nor had any employer or other relationship with Jeys during the relevant times, and current Defendants have offered no evidence for this assertion.

9) After the Defendants' lawsuit was filed, these defamatory statements were republished in the media, on social media, and throughout Nebraska, permanently damaging the reputation of Plaintiff Harrington and causing monetary damages.

10) The republication and embellishment of Defendants' defamation already resulted in a prior lawsuit against Nicholas Scalise, a former DJ for Plaintiff's club **(Exhibit "D").**

4

11) After Defendants' lawsuit was filed, Plaintiff's lawyers Fraser Stryker emailed, on January 6, 2026, to Defendants a comprehensive letter with exhibits with overwhelming evidence showing Plaintiff's innocence and non-involvement in Paradise City during relevant times

12) After receiving this evidence, Defendants requested summonses from the Court to proceed with serving Plaintiff with process.

13) Defendants then, sua sponte, amended their complaint a 2nd time to change their theory of liability for Plaintiff Harrington to assert that despite selling Paradise City to Tim Jeys, that the sale was in name only for a layer of liability protection, but that Plaintiff Harrington maintained control and ownership or that Paradise City was a "joint venture" of Plaintiff Harrington and Tim Jeys.

14) In an e-mail on January 28, 2026, Plaintiff Harrington, through his undersigned attorney, requested Defendants provide any evidence or description thereof of this joint venture or secret control by Plaintiff Harrington.

15) Defendants failed to respond or act to mitigate the damage they have created.

### FALSE AND BASELESS AVERMENTS FROM DECEMBER 8, 2025 LAWSUIT

16) The original complaint contains the following paragraphs concerning Plaintiff Harrington, all based presumably on the speculation that Plaintiff Harrington had previously owned Paradise City, but lack any evidence that he owned Paradise City at relevant times, because he did not:

17) Paragraph 5: *"Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska. At all relevant times, he owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska."* **FALSE.** Mr. Harrington did not own Paradise City at the time of occurrence.

18) Paragraph 33: *"Around Halloween 2019, Quinn drove DOE to Paradise City, a club owned by HARRINGTON outside of Elm Creek, Buffalo County, Nebraska."* **FALSE.** Mr.

5

Harrington did not own Paradise City at that time, Timmy Jeys did.

19) Paragraph 34: *"Quinn knew the manager of Paradise City, Timmy Jeys; the manager was an agent and employee of Harrington, acting in the course and scope of his employment at Paradise City."* **FALSE.** Jeys was not a manager, employee, or agent of Harrington, Jeys was the owner.

20) Paragraph 35: This paragraph is **FALSE** because it states that Timmy Jeys is *"the manager"* of Paradise City when Jeys was in fact the sole owner.

21) Paragraph 36: This paragraph is **FALSE** because it states that Jeys is the *"manager of Paradise City"* when Jeys was in fact the sole owner.

22) Paragraph 37: *"Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew Quinn was trafficking DOE for money."* **FALSE.** Jeys wasn't, "acting in the course and scope of his employment (for Mr. Harrington)," Jeys was the sole owner of the business.

23) Paragraph 38: *"acting in the course and scope of his employment"* is **FALSE** because Jeys was the sole owner at the time of occurrence.

24) Paragraph 39: *"acting in the course and scope of his employment"* is **FALSE** because Jeys was the sole owner at the time of occurrence.

25) Paragraph 40: *"Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment with HARRINGTON, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with teenage girls."* **FALSE.** Harrington was not Jeys's employer, and Harrington could not conspire with Quinn because they never met or even communicated with him.

26) The SECOND CAUSE OF ACTION states in its heading, *"HARRINGTON D/B/A PARADISE CITY.* **FALSE.** Paradise City was owned and operated by Timmy Jeys at the time

of occurrence. Harrington was not doing business as (D/B/A) Paradise City from March 2018 to April 2020.

27) Paragraph 62: *"HARRINGTON, doing business as Paradise City, acting through his employee and agent Timmy Jeys, knew or should have known that Paradise City violated 18 U.S.C. Section 1591 with respect to DOE."* **FALSE.** Mr. Harrington was not doing business as Paradise City. Timmy Jeys was not Mr. Harrington's employee and agent. Mr. Harrington didn't even go to Paradise City in the fall of 2019, so he would not or could not have known about something that allegedly occurred one night around Halloween six years ago.

28) Paragraph 63: *"employee Timmy Jeys"* is **FALSE**, he was the owner.

29) Paragraph 74: "*each Defendant in this case played an active and knowing role in DOE's torture."* **FALSE**. Mr. Harrington did not play, "an active and knowing role in DOE's torture," because he didn't even find out about it until this lawsuit was filed over six years later.

30) Paragraph 76: *"**With each Defendant,** DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity."* This is **FALSE** because Shane Harrington did not participate in or prolong Jane Doe's "captivity" as he first became aware of the 2019 incident over six years after it occurred.

31) Paragraph 77: *"**With each Defendant,** DOE experienced the despairing recognition that yet another man who could help her, was instead adding to her sexual and emotional victimization."* This is **FALSE** as Mr. Harrington did not, *"add(ing) to her sexual and emotional victimization,"* as he did not even find out that it occurred until over six years after it allegedly occurred.

32) Paragraph 78: *"**With each Defendant,** DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their*

7

*perverse sexual needs."* This is **FALSE** as Mr. Harrington never met Jane Doe and did not

treat her, "like an inanimate vehicle for (his) perverse sexual needs."

33) These **FALSE** statements were included in the lawsuit, together with a photograph of

Mr. Harrington.

34) Other than these false statements of fact regarding Shane Harrington and Meltech, Inc., these

parties do not appear relevantly in the remaining paragraphs of the 21-page lawsuit, and

there isn't a single accurate allegation regarding Plaintiffs in the lawsuit.

35) This demonstrates actual malice and an Abuse of Process because Defendants purposely

ruined Plaintiff's reputation without any diligence to relate the truth.

## DEFAMATION REPUBLICATION IN THE MEDIA AND ELSEWHERE

36) After Defendants filed their lawsuit with a false basis and/or without first performing due

diligence, the media published stories on the internet, in newspapers, on the radio and

through other media sources (as Defendants planned and anticipated), including but not

limited to the following: KUVR Rural Radio Holdrege 12/11/25, Lincoln Journal Star

12/13/25, Omaha World-Herald 12/13/25 and 12/20/25, Kearney Hub 12/13/25), The Grand

Island Independent (12/13/25), News-Press & Gazette 14 Nebraska TV: (12/15/25) and

Particle Media, Inc. dba Newsbreak 12/16/25.

37) Plaintiff Harrington estimates that hundreds of thousands of people saw these stories,

including Plaintiff Harrington's family, friends, and business associates and they were shared

with many more thousands of people, permanently damaging the reputation of Plaintiff.

38) Plaintiff Harrington's reputation has been damaged to such an extent that he no longer

feels comfortable living in the State of Nebraska, where his family, friends, and business

are located and he has sustained monetary damages.

39) The headlines include the following and many of the stories include a photograph of

8

Plaintiff together with his name:

(a) "***Nebraska woman sues strip club owner, motel over alleged sex trafficking as minor***"

(b) "***Woman sues strip club owner, motel over alleged sex trafficking***"

(c) "***Woman sues owner of defunct Elm Creek strip club, motel***"

(d) "***Sex trafficking victim files federal lawsuit against alleged traffickers and collaborators***"

(e) "***Nebraska woman sues strip club owner, motel over alleged sex trafficking as minor***"

40) The Lincoln Journal Star Published an article which falsely stated: *"The woman… is seeking punitive damages against Shane Harrington, the Omaha owner of Paradise City,"* which is **FALSE** because Mr. Harrington did not own Paradise City at the time of occurrence. It further states, *"No defendant has yet compensated Doe for how he exploited her body and her life…"* when Mr. Harrington had nothing to with the exploitation of Doe's body. Furthermore, the article states, *"each defendant in this case played an active and knowing role in Doe's torture." (Chaloupka alleged)* Which is absolutely false with regard to Plaintiffs Shane Harrington and Meltech, Inc.

41) The Omaha World-Herald published the following on 12/13/25: *"Nebraska woman who says she was trafficked at 15 has filed suit against strip club owner Shane Harrington, a motel and others… Jane Doe, is seeking punitive damages against Shane Harrington, the Omaha owner of Paradise City…"* This is **FALSE** because Mr. Harrington did not own Paradise City when the incident occurred, it was owned by Tim Jeys from 2018 to 2020. The article further states, *"No defendant has yet compensated Doe for how he exploited her body and her life for his own short-term sexual gratification," (Chaloupka said)* which is **FALSE** because Mr. Harrington had nothing to do with the exploitation of Doe." Lastly, the article states, *"each*

9

*defendant in this case played an active and knowing role in Doe's torture." (Chaloupka alleged)* Which is absolutely **FALSE** with regard to Plaintiffs Shane Harrington and Meltech, Inc. as they couldn't play, "an active and knowing role," in something they only learned about six years later.

42) Nebvraska.TV falsely reported as follows:

> **"FURNAS COUNTY, Neb. — The victim of a Furnas County sex trafficking case has filed a federal civil lawsuit against her traffickers and alleged collaborators. The lawsuit was filed last Monday in U.S. District Court by the victim who is referred to in court documents as "Jane Doe" against <u>Shane Harrington and his business Paradise City</u>... The lawsuit claims Harrington and Paradise City staff knew or should have known she had no choice in the matter and that she was underage."**

43) The Nebraska TV article is false and defamatory because it states Paradise City was "his business" (Mr. Harrington's) when it was owned by Tim Jeys at the time of occurrence. It also falsely says that Harrington "knew or should have known she had not choice in the matter and that she was underage," when in fact Mr. Harrington didn't even learn about the incident until after the civil lawsuit was filed against him December 8, 2025.

44) Legacy.Newspress.com, included the 'following false and defamatory statements of Defendant Chaloupka: The articles falsely states that, "'*each defendant in this case played an active and knowing role in Doe's torture,'* (Chaloupka alleged)." Plaintiffs did not own Paradise City at the time of occurrence, so it was impossible for Mr. Harrington to play, "an active and knowing role in Doe's torture," as he did not learn about it until over six years later.

45) The Grand Island Independent, Kearney Hub, and other media entities in Nebraska published the same or similar stories online and in traditional newspapers.

46) All of these false and malicious publications regarding Plaintiff Shane Harrington and Meltech, Inc. were proximately caused by Defendants' frivolous lawsuit and their failure to

perform due diligence before making outlandish accusations.

47) Defendants' lawsuit was malicious and designed to ruin the reputation of Plaintiff, to cause Plaintiff severe emotional distress and monetary damages.

## **SECOND AMENDED COMPLAINT FILED JANUARY 23, 2026**

48) On December 24, 2025, Defendants filed an amended complaint very similar to their original complaint.

49) After being provided evidence establishing that Shane Harrington and Meltech, Inc. were out of possession landowners, on January 23, 2026, Jane Doe filed a second amended complaint, alleging that Harrington and Meltech, Inc. were engaged in a **Joint Venture** with Tim Jeys doing business as Paradise City, as well as alleging that Jeys was an employee of Harrington.

50) These allegations, like the prior allegation of ownership are 100% FALSE and made without any supporting evidence. Also, the transfer of Paradise City to Jeys was publicized and executed in a manner that no one could reasonably believe the transaction was done as a proxy.

51) These are all fabrications by Defendants to manufacture sex trafficking liability against an innocent man, Shane Harrington, to pay for the crimes and negligence of other people.

52) Harrington and Meltech, Inc. were not engaged in a joint venture with Tim Jeys, nor were they the employers of Jeys.

53) From March 2018 to April 2020, Jeys was the sole owner and operator of Paradise City, with 100% control of operations.

54) Harrington, Meltech, Inc. and Tim Jeys executed a sales contract on March 7, 2018 (attached hereto).

55) Since the March 7, 2018, notarized contract between Shane Harrington, Meltech, Inc. and Timmy Jeys makes clear that Jeys was the sole owner and operator of Paradise City from

March 2018 to April 2020, Defendants' complaint, amended complaint, second amended complaint and summons constitute an Abuse of Process.

## JURISDICTION

56) This action is authorized and instituted pursuant to the laws of the State of Nebraska.

## VENUE

57) Venue is proper in Douglas County because that is where Plaintiff Harrington resides, where his business is located, where he suffered damages, where the defamation was published, and where the majority of witnesses are located.

## PARTIES

## PLAINTIFF

58) Plaintiff Shane Harrington is a resident of Douglas County, Nebraska.

## DEFENDANTS

59) Maren Chaloupka is a Nebraska attorney with NSBA # 20864 who resides at 311 37th Street, Scottsbluff, NE 69361.

60) Chaloupka Law, LLC is a Nebraska limited liability company located at 1906 Broadway, Scottsbluff, NE 69363.

61) Todd Flynn is a Nebraska attorney with NSBA # 15866.

62) Flynn Law Office is a law firm located in Ainsworth, Nebraska.

## CAUSE OF ACTION

### ABUSE OF PROCESS

### Against All Defendants

63) Plaintiff repeats and reiterates all paragraphs of this complaint as if fully set forth herein.

64) Defendants have committed an Abuse of Process under Nebraska law by filing a baseless sex trafficking lawsuit against Plaintiff Harrington with the ulterior motive of deriving money

12

from Plaintiff Harrington by adding him to the extreme joint and several liability, causing him and/or his insurance company the vexatious decision between risk of trial or settlement.

65) Defendants' lawsuit revolves around the malicious and false assertion that Plaintiff Harrington owned Paradise City and had an employer relationship with Jeys during the time period Jane Doe was trafficked.

66) Defendants' December 8, 2025, complaint revolved around the malicious and false assertions that Plaintiff Harrington owned Paradise City and had an employer relationship with Jeys during the time-period Defendant Doe was trafficked.

67) On January 23, 2025, Defendants filed a second amended complain to pivot slightly to allege that Harrington and Meltech, Inc. were engaged in a "joint venture" with Tim Jeys, which is equally false.

68) From March 2018 to April 2020, Shane Harrington and Meltech, Inc. were out of possession landowners of the property where Paradise City is located. Defendants were made aware of this, should have been aware when they initially filed their lawsuit if they had done basic due diligence, and proceeded without any basis for their contrary assertions.

69) The Defendants have added Plaintiff Shane Harrington to this lawsuit because he has assets and insurance, not because he did anything wrong or has any legal liability.

70) These false statements in the complaint, amended complaint, and second amended complaint were published in the general media and on social media to the entire world, they permanently damaged the reputation of Plaintiff, they were published with malice, and they resulted in special damages and general damages.

71) Defendants' original complaint asserted the following false statements of fact: (a) Harrington was involved in the sex trafficking of Jane Doe; (b) Harrington was the owner of Paradise City in 2019 during the time period in which Defendant Doe was trafficked; (c) Jeys was the

manager of Paradise City in 2019; (d) Jeys was an employee of Shane Harrington; and that (e) HARRINGTON (was) D/B/A PARADISE CITY.

72) The complaint also implies that Harrington was working together with convicted sex trafficker Quinn, and his associates, which is absolutely false.

73) The second amended complaint is based upon the false assertions that: (a) Plaintiff was involved in the sex trafficking of Jane Doe; (b) Plaintiff was involved in a joint venture, partnership and conspiracy with Tim Jeys; (c) Jeys was an employee of Shane Harrington; and that (d) HARRINGTON (was) D/B/A PARADISE CITY.

74) Without these false and baseless allegations, Plaintiff Harrington is not a proper defendant in Defendants' lawsuit.

75) The filing of Defendants' lawsuit December 8, 2025, immediately became a matter of public record upon filing on websites including but not limited to justia.com and pacermonitor.com and were reported online and in print by the Lincoln Journal Star, Omaha World Herald, and several other media entities in Nebraska and around the country.

76) The publication of Defendants' lawsuit resulted in damages to Plaintiff Harrington's adult business interests, which revolve around maintaining the reputation of being run legally and mindfully.

77) As a result of the foregoing, Plaintiff estimates the value of his business has lost over $1 million, together with future lost earnings in a 7-figure amount to be determined at trial.

78) As a result of the foregoing Abuse of Process by Defendants, Plaintiff has suffered damages in excess of $5 million.

## CONCLUSION

Plaintiff Shane Harrington believes it is an absolute tragedy what happened to Jane Doe over the course of a year or more in central Nebraska back in 2019. Plaintiff Harrington has fought sex trafficking for the 25 years he has been in the adult industry and during that entire time the only ticket he ever received was a health code violation during Covid-19. His clubs have been open for thousands of nights and he has served over 250,000 patrons. His club in Omaha has over 1,000 Google ratings with an average of 4.8 out of 5.0 stars. He has helped hundreds of dancers collectively make millions of dollars in a safe, legal environment. However, Plaintiff did nothing tortious, unethical or illegal and he is not responsible for the damages for which Jane Doe is suing. Defendants know this and yet, they've used their lawsuit (the summons, complaint amended complaint, and second amended complaint) for the ulterior purposes previously stated, with the consequence of destroying Plaintiff Harrington's reputation. This is clearly an Abuse of Process that has inflicted severe emotional distress upon Plaintiff and caused him monetary damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests compensatory damages in an amount in excess of $5 million to be determined at trial, together with attorneys' fees and the costs of this action.

Respectfully Submitted,

February 5, 2026

By: /s/ Travis Penn

Travis Penn
Penn Law Firm, LLC
125 S. 93rd Ave.
Omaha, NE 68114
Travis.Penn@gmail.com

*Attorney for Plaintiff*

15

By: /s/Evan Spencer

Evan Spencer
Evan Spencer Law, PLLC
305 Broadway, 7 th Floor
New York, NY 10007
Tel. 917.547.4665
Evan@EvanSpencerLaw.com

*Applying for Admission*
*Pro Hac Vice*

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking,<br><br>Plaintiff,<br><br>vs.<br><br>SHANE HARRINGTON d/b/a PARADISE CITY; CARL KRAMER, SR.; JOSEPH BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |

Jane Doe, a victim of sex trafficking, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states, alleges and avers as follows:

### INTRODUCTION

1.

This case is brought pursuant to 18 U.S.C. § 1595, the civil remedy provision of the federal Trafficking Victims Protection Act (TVPA), and 18 U.S.C. § 2255. DOE is a young woman who, as a minor child, endured repeated non-consensual sexual acts at the hands of her trafficker and his collaborators. Her date of birth is October 1, 2003. From July 2019 through January 2020, 15-year-old DOE was exploited as, and was expected to "perform" as, a vehicle for the perverse sexual interests of men, to include Defendants herein. "JANE DOE" is a pseudonym, used to protect DOE's privacy and safety in recognition that she is a victim of sex trafficking.

2.

All of the men who used and abused DOE were fully aware that their sexual encounters were

1

not a consensual, romantic relationship. For those men, the fact that DOE was there by coercion was "the point" – the fact of her coercion was, itself, sexually titillating. Any of those men could have refrained (or even summoned law enforcement); instead, all proceeded to subject DOE to their personal and perverse sexual preferences.

3.

Some of these Defendants have been prosecuted. DOE has cooperated with all aspects of the criminal litigation, such that the State of Nebraska was able to obtain convictions against some of these Defendants. But no Defendant has yet been held accountable directly to DOE for the harm they inflicted on her. No Defendant has yet compensated DOE for how he exploited her body and her life for his own short-term sexual gratification.

PARTIES, JURISDICTION AND VENUE

4.

DOE is a citizen and resident of Harlan County, Nebraska. Her date of birth is October 1, 2003. She is proceeding under a pseudonym because she is a victim of sexual abuse.

2

5.

Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska.



At all relevant times, he owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska.

6.

Defendant Carl Kramer, Sr. is a citizen and resident of Oxford, Furnas County, Nebraska.



3

7.

Defendant Joseph Baumbaugh (aka "UPS Joe") is a citizen and resident of McCook, Red Willow County, Nebraska.



8.

Defendant Jay Sedhi Hospitality LLC ("JSH") was at all relevant times a Nebraska limited liability corporation, domiciled in Box Butte County, Nebraska.

9.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 18 U.S.C. §§ 1595 and 2255. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Furnas and Buffalo Counties, Nebraska.

## FACTUAL BACKGROUND

### *DOE and Billy Quinn*

10.

DOE was raised mostly in Furnas County, Nebraska. Her home life as a child and teenager ranged from chaotic to abusive. She was homeschooled and isolated from both peers in her age

4

group and adults who could have been helpful to her.  She did not receive the benefit of exposure to more stable, less dangerous and chaotic ways to live.

11.

By age 14, DOE had run away, and was floating between homes of older siblings and other places she could stay.  When DOE was 15, Billy Quinn, then age 55, offered to DOE that she could stay at a house he owned in Oxford, Nebraska.



12.

DOE knew Quinn.  Some of her siblings had worked for Quinn, and Quinn had previously offered DOE a job.  DOE knew Quinn to be violent.  The first time DOE was alone with Quinn, he sexually assaulted her and held a knife to her throat.

13.

But, DOE was 15 years old, homeless, and totally without resources.  She had no trustworthy family to help her.  She did not have the fund of knowledge that an adult would have, to even ask for help from people who are reliable.  And, DOE was in a county that has limited resources even for those who do know how, and who, to ask for help.  DOE was making survival decisions out of

5

desperation, understandable immaturity, lack of information and trauma.

14.

Thus DOE accepted Quinn's offer for housing.  The terms and conditions of Quinn's offer were that DOE had to have sex with Quinn.

15.

In July 2019, Quinn began to traffic DOE to other men.

16.

*DOE, Quinn and KRAMER*

In 2019, KRAMER was 48 years old.  He owned the Oxford Meat Locker & Gun Store in Oxford, Furnas County, Nebraska.  He was a licensed firearms dealer and, per the Oxford Meat Locker & Gun Store website, "a proud member of the Oxford community."

17.

In autumn 2019, Quinn drove DOE to the Oxford Meat Locker & Gun Store after hours.



KRAMER was there.  Quinn and KRAMER discussed KRAMER paying $50.00 to have sex with DOE.  Quinn lifted up DOE's shirt to show KRAMER her breasts, and invited KRAMER to rub

6

DOE's vagina.  Quinn instructed KRAMER on how to contact DOE via Snapchat when he wanted to have sex.

18.

KRAMER did not decline Quinn's invitations, contact law enforcement or do anything else to help DOE.

19.

Instead, between October and December 2019, KRAMER had sex with DOE at Oxford Meat Locker & Gun Store up to forty times, always paying DOE $50.00 after each event.  On Quinn's orders, DOE then gave those payments to Quinn, and described the details of each sexual encounter to Quinn.

20.

KRAMER also demanded nude images of DOE.  Via Snapchat, DOE complied with KRAMER's demands.  KRAMER saved the nude images of DOE for his masturbation needs.

21.

KRAMER knew Quinn was trafficking DOE for money.

22.

KRAMER knew or should have known that DOE had no choice whether to participate.

23.

KRAMER knew or should have known that DOE was participating only under coercion.

24.

KRAMER conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to KRAMER's sexual benefit.

7

25.

_DOE, Quinn and Joseph "UPS Joe" Baumbach_

In August and September 2019, BAUMBACH was working for United Parcel Service as a delivery driver. His route included a property owned by Quinn in Furnas County. He was known as "UPS Joe," and was friendly with Quinn. He was 59 years old.

26.

When BAUMBACH arrived at Quinn's property, Quinn invited him to walk around to the back of the house. There, DOE was in Quinn's hot tub, on Quinn's orders. DOE was naked, also on Quinn's orders.

27.

Quinn invited BAUMBACH to "check out my prize," meaning DOE. BAUMBACH did, exclaiming "wow!" BAUMBACH did not leave, call law enforcement or do anything to help DOE. Instead, BAUMBACH used his phone to record a video of DOE in the hot tub.

28.

On a separate occasion, Quinn directed DOE to masturbate for BAUMBACH. Again, BAUMBACH did not leave, notify law enforcement or do anything to help DOE. Instead, BAUMBACH not only watched, but he also recorded DOE masturbating on his cell phone on Quinn's order, saving the recording as a keepsake for his own masturbation purposes.

29.

BAUMBACH knew Quinn was trafficking DOE for money.

30.

BAUMBACH knew or should have known that DOE had no choice whether to participate.

8

31.

BAUMBACH knew or should have known that DOE was participating only under coercion.

32.

BAUMBACH conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to BAUMBACH's sexual benefit.

33.

_DOE, Quinn and Shane Harrington d/b/a Paradise City_

Around Halloween 2019, Quinn drove DOE to Paradise City, a club owned by HARRINGTON outside of Elm Creek, Buffalo County, Nebraska.



34.

Quinn knew the manager of Paradise City, Timmy Jeys; the manager was an agent and employee of HARRINGTON, acting in the course and scope of his employment at Paradise City.



35.

With the knowledge and permission of the manager, Timmy Jeys, Quinn took DOE into Paradise City and showed her to a construction crew that was patronizing the club. The manager of Paradise City knew that Quinn was in the club for the purpose of "selling" DOE to its patrons, which is what happened: next door to Paradise City was a Rodeway Inn motel, where the Paradise City patrons had sex with DOE under Quinn's supervision.

36.

Timmy Jeys, the manager of Paradise City also facilitated one of the Paradise City dancers performing a sexual act on DOE while Quinn and DOE were there.

37.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew Quinn was trafficking DOE for money.

38.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment,

10

knew or should have known that DOE had no choice whether to participate.

39.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew or should have known that DOE was participating only under coercion.

40.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment with HARRINGTON, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with a teenage girl.

41.

<u>DOE, Quinn and Jay Sedhi Hospitality LLC</u>

In 2019, Jay Sedhi Hospitality LLC ("JSH") owned the Rodeway Inn, located near Paradise City outside of Elm Creek, Buffalo County, Nebraska.



42.

When Quinn took DOE to Paradise City to traffic her to patrons of that club, the arrangement was for the patrons to have sex with DOE at the nearby Rodeway Inn.

11

43.

The employees and agents of the Rodeway Inn were, at all relevant times, acting in the course and scope of their employment with JSH.

44.

Before October 2019, the employees and agents JSH, working at Rodeway Inn, knew or should have known that the Rodeway Inn was used for sex trafficking.

45.

Red flags and direct employee interactions which alerted or should have alerted employees and agents of JSH to sex trafficking activity at the Rodeway Inn included, but was not limited to:

*      Proximity to Paradise City;

*      Proximity to a truck stop;

*      Ability of guests to enter rooms from the parking lot, instead of traveling through a staffed hotel lobby;

*      Indicia of commercial sex within the rooms, including used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

*      Indicia of illegal drug use;

*      Excessive requests for sheets and/or housekeeping service;

*      Violence and loud disturbances in common and public hotel areas;

*      Excessive calls to law enforcement;

*      Hotel guest complaints; and/or

*      Online reviews indicating the likelihood of sex trafficking and criminal activity at the Rodeway Inn.

46.

Before and during the period that DOE was trafficked at the Rodeway Inn, JSH ignored these signs that its hotel was used for sex trafficking, to its financial benefit.

47.

The financial benefit was that people would pay for rooms at the Rodeway Inn – an otherwise dilapidated, rundown and vermin-infested motel – because they knew they could use the rooms to have sex with victims of sex trafficking, without interference by hotel staff.

48.

JSH, acting through its agents and employees, participated in a venture with Quinn, by tacit agreement and/or pattern of conduct, by which Quinn could traffic DOE and JSH would receive the benefit of customers paying for rooms where they could have sex with DOE.

49.

There was a continuous business relationship between JSH and sex traffickers, including but not limited to Quinn.  By that relationship, sex traffickers, including Quinn, knew that they could traffic captive sex workers like DOE at the Rodeway Inn without interference from hotel staff.

50.

JSH failed to enact any policies or training for its employees or agents to prevent sex trafficking at the Rodeway Inn.  This failure was, in fact, a choice designed to keep rooms rented by people who wanted to have sex with captive sex workers – because the hotel was otherwise an unattractive lodging option for travelers without an interest in criminal activity.

51.

At the Rodeway Inn, Quinn took DOE from room to room, presenting DOE for commercial

13

sexual activity to the paying guests of Rodeway Inn. DOE was coerced into sexual intercourse over and over, ending only when one of the guests forced her into anal sex and she fled from the room.

*The criminal investigation*

52.

On January 19, 2020, DOE revealed to a brother-in-law the abuse she had been enduring at the hands of Quinn and his co-conspirators, including these Defendants.

53.

DOE's brother-in-law notified the Furnas County Sheriff's Office, which in turn initiated a criminal investigation. The investigation was taken over by the Office of the Nebraska Attorney General. The Attorney General ultimately obtained convictions against Quinn, BAUMBACH, KRAMER, BROOKS and multiple other men who had sex with DOE for money.

## FIRST CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### KRAMER AND BAUMBACH

54.

KRAMER patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with KRAMER.

55.

KRAMER patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with KRAMER.

14

56.

BAUMBACH patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with BAUMBACH.

57.

BAUMBACH patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with BAUMBACH.

58.

DOE suffered and continues to suffer damage as a result of KRAMER's and BAUMBACH's direct participation in her involuntary trafficking.

## SECOND CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### HARRINGTON D/B/A PARADISE CITY

59.

Doing business as Paradise City, HARRINGTON participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

60.

Employees and agents of Paradise City patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

61.

Employees and agents of Paradise City patronized and solicited DOE, knowing and/or in

15

reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

62.

HARRINGTON, doing business as Paradise City, acting through his employee and agent Timmy Jeys, knew or should have known that Paradise City violated 18 U.S.C. § 1591 with respect to DOE.

63.

Paradise City, acting through its agent and employee Timmy Jeys, nonetheless participated in this venture, and knowingly benefitted from that participation.

64.

DOE suffered and continues to suffer damage as a result of Paradise City's direct participation in her involuntary trafficking.

### THIRD CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### JAY SEDHI HOSPITALITY

65.

Doing business as Rodeway Inn, Jay Sedhi Hospitality LLC ("JSH") participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

66.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

16

67.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

68.

Employees and agents of Rodeway Inn on this occasion were familiar with Quinn.

69.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn was taking a young woman from room to room was so that he could present her for commercial sexual activity to its guests.

70.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn, who himself was not a hotel guest, was loitering on its property, outside of the hotel rooms, was because he was waiting for Rodeway Inn guests to finish their commercial sexual activity with DOE.

71.

JSH, doing business as Rodeway Inn, acting through its employees and agents, knew or should have known that Rodeway Inn and its guests violated 18 U.S.C. § 1591 with respect to DOE by allowing Quinn to present DOE to its guests for commercial sexual activity.

72.

JSH, doing business as Rodeway Inn, acting through its agents and employees, nonetheless participated in this venture, and knowingly benefitted from that participation.

17

73.

DOE suffered and continues to suffer damage as a result of JSH's participation in her involuntary trafficking.

## DAMAGES

74.

For his own financial gain and sexual perversions, Billy Quinn forced DOE – a teenager whom he found in a wounded, desperate and vulnerable state – to endure months of brutal sexual, physical and emotional abuse. But Quinn did not act alone: each Defendant in this case played an active and knowing role in DOE's torture.

75.

Because of the selfishness of these Defendants, DOE experienced being sold for $50.00 for the sexual pleasure of strange adult men, over and over and over for months. She received, and internalized, the inescapable messages that:

    *      she was nothing more than an orifice with a person around it;

    *      she had no rights, no agency, no past, no future and no soul; and

    *      she was so lacking in value as a human being that it did not matter if they hurt DOE or even if they killed her.

76.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity.

77.

With each Defendant, DOE experienced the despairing recognition that yet another man

18

who could help her, was instead adding to her sexual and emotional victimization.

78.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their perverse sexual needs.

79.

None of those messages, and none of those recognitions, faded away simply because law enforcement finally apprehended Quinn. These are bells that cannot be un-rung.

## PUNITIVE DAMAGES

80.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including DOE. Defendants committed the acts and omissions alleged herein and subjected DOE to brutal and inhumane treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

81.

The recovery of punitive damages is permitted under 18 U.S.C. § 1595 and 18 U.S.C. § 2255, and is appropriate in this case. This instance of reckless and callous indifference to DOE's life and safety should be punished through the imposition of punitive damages so as to make an example of

conduct that will not be tolerated.

## ATTORNEY'S FEES

### 82.

As a result of Defendants' actions as alleged herein, DOE was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.    For compensatory damages in an amount to be specifically proven at trial;

2.    For punitive damages in an amount to be determined at trial;

3.    For reasonable attorney's fees and the costs of litigation;

4.    For post-judgment interest at the maximum legal rate;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that this matter be tried to a jury in North Platte, Nebraska.

JANE DOE, Plaintiff,


By: ___/s/ Maren Lynn Chaloupka_____
     Maren Lynn Chaloupka – NSBA #20864
     Chaloupka Law LLC
     P.O. Box 1724
     1906 Broadway
     Scottsbluff, Nebraska  69363-1724
     (308) 270-5091
     mlc@chaloupkalaw.net

     -AND-

     Todd Flynn – NSBA #15866
     Flynn Law Office
     P.O. Box 247
     Ainsworth, Nebraska 69210
     (402) 382-3420
     tflynnlaw@threeriver.net

     *Attorneys for Plaintiff*

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking, | Case No. 7:25-cv-5010 |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |
| SHANE HARRINGTON d/b/a PARADISE CITY; CARL KRAMER, SR.; JOEY BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation, | |
| Defendants. | |

Jane Doe, a victim of sex trafficking, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states, alleges and avers as follows:

## INTRODUCTION

1.

This case is brought pursuant to 18 U.S.C. § 1595, the civil remedy provision of the federal Trafficking Victims Protection Act (TVPA), and 18 U.S.C. § 2255. DOE is a young woman who, as a minor child, endured repeated non-consensual sexual acts at the hands of her trafficker and his collaborators. Her date of birth is October 1, 2003. From July 2019 through January 2020, 15-year-old DOE was exploited as, and was expected to "perform" as, a vehicle for the perverse sexual interests of men, to include Defendants herein. "JANE DOE" is a pseudonym, used to protect DOE's privacy and safety in recognition that she is a victim of sex trafficking.

2.

All of the men who used and abused DOE were fully aware that their sexual encounters were

1

not a consensual, romantic relationship. For those men, the fact that DOE was there by coercion was "the point" – the fact of her coercion was, itself, sexually titillating. Any of those men could have refrained (or even summoned law enforcement); instead, all proceeded to subject DOE to their personal and perverse sexual preferences.

3.

Some of these Defendants have been prosecuted. DOE has cooperated with all aspects of the criminal litigation, such that the State of Nebraska was able to obtain convictions against some of these Defendants. But no Defendant has yet been held accountable directly to DOE for the harm they inflicted on her. No Defendant has yet compensated DOE for how he exploited her body and her life for his own short-term sexual gratification.

**PARTIES, JURISDICTION AND VENUE**

4.

DOE is a citizen and resident of Harlan County, Nebraska. Her date of birth is October 1, 2003. She is proceeding under a pseudonym because she is a victim of sexual abuse.

2

5.

Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska.



At all relevant times, he owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska.

6.

Defendant Carl Kramer, Sr. is a citizen and resident of Oxford, Furnas County, Nebraska.



3

7.

Defendant Joey Baumbach (aka "UPS Joe") is a citizen and resident of McCook, Red Willow County, Nebraska.



8.

Defendant Jay Sedhi Hospitality LLC ("JSH") was at all relevant times a Nebraska limited liability corporation, domiciled in Box Butte County, Nebraska.

9.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 18 U.S.C. §§ 1595 and 2255.  The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Furnas and Buffalo Counties, Nebraska.

## FACTUAL BACKGROUND

### *DOE and Billy Quinn*

10.

DOE was raised mostly in Furnas County, Nebraska.  Her home life as a child and teenager ranged from chaotic to abusive.  She was homeschooled and isolated from both peers in her age

4

group and adults who could have been helpful to her.  She did not receive the benefit of exposure to more stable, less dangerous and chaotic ways to live.

11.

By age 14, DOE had run away, and was floating between homes of older siblings and other places she could stay.  When DOE was 15, Billy Quinn, then age 55, offered to DOE that she could stay at a house he owned in Oxford, Nebraska.



12.

DOE knew Quinn.  Some of her siblings had worked for Quinn, and Quinn had previously offered DOE a job.  DOE knew Quinn to be violent.  The first time DOE was alone with Quinn, he sexually assaulted her and held a knife to her throat.

13.

But, DOE was 15 years old, homeless, and totally without resources.  She had no trustworthy family to help her.  She did not have the fund of knowledge that an adult would have, to even ask for help from people who are reliable.  And, DOE was in a county that has limited resources even for those who do know how, and who, to ask for help.  DOE was making survival decisions out of

5

desperation, understandable immaturity, lack of information and trauma.

14.

Thus DOE accepted Quinn's offer for housing.  The terms and conditions of Quinn's offer
were that DOE had to have sex with Quinn.

15.

In July 2019, Quinn began to traffic DOE to other men.

16.

_DOE, Quinn and KRAMER_

In 2019, KRAMER was 48 years old.  He owned the Oxford Meat Locker & Gun Store in
Oxford, Furnas County, Nebraska.  He was a licensed firearms dealer and, per the Oxford Meat
Locker & Gun Store website, "a proud member of the Oxford community."

17.

In autumn 2019, Quinn drove DOE to the Oxford Meat Locker & Gun Store after hours.



KRAMER was there.  Quinn and KRAMER discussed KRAMER paying $50.00 to have sex with
DOE.  Quinn lifted up DOE's shirt to show KRAMER her breasts, and invited KRAMER to rub

6

DOE's vagina.  Quinn instructed KRAMER on how to contact DOE via Snapchat when he wanted to have sex.

18.

KRAMER did not decline Quinn's invitations, contact law enforcement or do anything else to help DOE.

19.

Instead, between October and December 2019, KRAMER had sex with DOE at Oxford Meat Locker & Gun Store up to forty times, always paying DOE $50.00 after each event.  On Quinn's orders, DOE then gave those payments to Quinn, and described the details of each sexual encounter to Quinn.

20.

KRAMER also demanded nude images of DOE.  Via Snapchat, DOE complied with KRAMER's  demands.  KRAMER saved the nude images of DOE for his masturbation needs.

21.

KRAMER knew Quinn was trafficking DOE for money.

22.

KRAMER knew or should have known that DOE had no choice whether to participate.

23.

KRAMER knew or should have known that DOE was participating only under coercion.

24.

KRAMER conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to KRAMER's sexual benefit.

7

25.

*DOE, Quinn and Joey "UPS Joe" Baumbach*

In August and September 2019, BAUMBACH was working for United Parcel Service as a delivery driver. His route included a property owned by Quinn in Furnas County. He was known as "UPS Joe," and was friendly with Quinn. He was 59 years old.

26.

When BAUMBACH arrived at Quinn's property, Quinn invited him to walk around to the back of the house. There, DOE was in Quinn's hot tub, on Quinn's orders. DOE was naked, also on Quinn's orders.

27.

Quinn invited BAUMBACH to "check out my prize," meaning DOE. BAUMBACH did, exclaiming "wow!" BAUMBACH did not leave, call law enforcement or do anything to help DOE. Instead, BAUMBACH used his phone to record a video of DOE in the hot tub.

28.

On a separate occasion, Quinn directed DOE to masturbate for BAUMBACH. Again, BAUMBACH did not leave, notify law enforcement or do anything to help DOE. Instead, BAUMBACH not only watched, but he also recorded DOE masturbating on his cell phone on Quinn's order, saving the recording as a keepsake for his own masturbation purposes.

29.

BAUMBACH knew Quinn was trafficking DOE for money.

30.

BAUMBACH knew or should have known that DOE had no choice whether to participate.

8

31.

BAUMBACH knew or should have known that DOE was participating only under coercion.

32.

BAUMBACH conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to BAUMBACH's sexual benefit.

33.

*<u>DOE, Quinn and Shane Harrington d/b/a Paradise City</u>*

Around Halloween 2019, Quinn drove DOE to Paradise City, a club owned by HARRINGTON outside of Elm Creek, Buffalo County, Nebraska.



34.

Quinn knew the manager of Paradise City, Timmy Jeys; the manager was an agent and employee of HARRINGTON, acting in the course and scope of his employment at Paradise City.



35.

With the knowledge and permission of the manager, Timmy Jeys, Quinn took DOE into Paradise City and showed her to a construction crew that was patronizing the club. The manager of Paradise City knew that Quinn was in the club for the purpose of "selling" DOE to its patrons, which is what happened: next door to Paradise City was a Rodeway Inn motel, where the Paradise City patrons had sex with DOE under Quinn's supervision.

36.

Timmy Jeys, the manager of Paradise City also facilitated one of the Paradise City dancers performing a sexual act on DOE while Quinn and DOE were there.

37.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew Quinn was trafficking DOE for money.

38.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment,

10

knew or should have known that DOE had no choice whether to participate.

39.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment, knew or should have known that DOE was participating only under coercion.

40.

Timmy Jeys, the manager of Paradise City, acting in the course and scope of his employment with HARRINGTON, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with a teenage girl.

41.

<u>*DOE, Quinn and Jay Sedhi Hospitality LLC*</u>

In 2019, Jay Sedhi Hospitality LLC ("JSH") owned the Rodeway Inn, located near Paradise City outside of Elm Creek, Buffalo County, Nebraska.



42.

When Quinn took DOE to Paradise City to traffic her to patrons of that club, the arrangement was for the patrons to have sex with DOE at the nearby Rodeway Inn.

11

43.

The employees and agents of the Rodeway Inn were, at all relevant times, acting in the course and scope of their employment with JSH.

44.

Before October 2019, the employees and agents JSH, working at Rodeway Inn, knew or should have known that the Rodeway Inn was used for sex trafficking.

45.

Red flags and direct employee interactions which alerted or should have alerted employees and agents of JSH to sex trafficking activity at the Rodeway Inn included, but was not limited to:

* Proximity to Paradise City;

* Proximity to a truck stop;

* Ability of guests to enter rooms from the parking lot, instead of traveling through a staffed hotel lobby;

* Indicia of commercial sex within the rooms, including used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

* Indicia of illegal drug use;

* Excessive requests for sheets and/or housekeeping service;

* Violence and loud disturbances in common and public hotel areas;

* Excessive calls to law enforcement;

* Hotel guest complaints; and/or

* Online reviews indicating the likelihood of sex trafficking and criminal activity at the Rodeway Inn.

12

46.

Before and during the period that DOE was trafficked at the Rodeway Inn, JSH ignored these signs that its hotel was used for sex trafficking, to its financial benefit.

47.

The financial benefit was that people would pay for rooms at the Rodeway Inn – an otherwise dilapidated, rundown and vermin-infested motel – because they knew they could use the rooms to have sex with victims of sex trafficking, without interference by hotel staff.

48.

JSH, acting through its agents and employees, participated in a venture with Quinn, by tacit agreement and/or pattern of conduct, by which Quinn could traffic DOE and JSH would receive the benefit of customers paying for rooms where they could have sex with DOE.

49.

There was a continuous business relationship between JSH and sex traffickers, including but not limited to Quinn.  By that relationship, sex traffickers, including Quinn, knew that they could traffic captive sex workers like DOE at the Rodeway Inn without interference from hotel staff.

50.

JSH failed to enact any policies or training for its employees or agents to prevent sex trafficking at the Rodeway Inn.  This failure was, in fact, a choice designed to keep rooms rented by people who wanted to have sex with captive sex workers – because the hotel was otherwise an unattractive lodging option for travelers without an interest in criminal activity.

51.

At the Rodeway Inn, Quinn took DOE from room to room, presenting DOE for commercial

13

sexual activity to the paying guests of Rodeway Inn.  DOE was coerced into sexual intercourse over and over, ending only when one of the guests forced her into anal sex and she fled from the room.

*The criminal investigation*

52.

On January 19, 2020, DOE revealed to a brother-in-law the abuse she had been enduring at the hands of Quinn and his co-conspirators, including these Defendants.

53.

DOE's brother-in-law notified the Furnas County Sheriff's Office, which in turn initiated a criminal investigation.  The investigation was taken over by the Office of the Nebraska Attorney General.  The Attorney General ultimately obtained convictions against Quinn, BAUMBACH, KRAMER, BROOKS and multiple other men who had sex with DOE for money.

## FIRST CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### KRAMER AND BAUMBACH

54.

KRAMER patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with KRAMER.

55.

KRAMER patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with KRAMER.

14

56.

BAUMBACH patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with BAUMBACH.

57.

BAUMBACH patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with BAUMBACH.

58.

DOE suffered and continues to suffer damage as a result of KRAMER's and BAUMBACH's direct participation in her involuntary trafficking.

## SECOND CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### HARRINGTON D/B/A PARADISE CITY

59.

Doing business as Paradise City, HARRINGTON participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

60.

Employees and agents of Paradise City patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

61.

Employees and agents of Paradise City patronized and solicited DOE, knowing and/or in

reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

62.

HARRINGTON, doing business as Paradise City, acting through his employee and agent Timmy Jeys, knew or should have known that Paradise City violated 18 U.S.C. § 1591 with respect to DOE.

63.

Paradise City, acting through its agent and employee Timmy Jeys, nonetheless participated in this venture, and knowingly benefitted from that participation.

64.

DOE suffered and continues to suffer damage as a result of Paradise City's direct participation in her involuntary trafficking.

### THIRD CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### JAY SEDHI HOSPITALITY

65.

Doing business as Rodeway Inn, Jay Sedhi Hospitality LLC ("JSH") participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

66.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

16

67.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

68.

Employees and agents of Rodeway Inn on this occasion were familiar with Quinn.

69.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn was taking a young woman from room to room was so that he could present her for commercial sexual activity to its guests.

70.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn, who himself was not a hotel guest, was loitering on its property, outside of the hotel rooms, was because he was waiting for Rodeway Inn guests to finish their commercial sexual activity with DOE.

71.

JSH, doing business as Rodeway Inn, acting through its employees and agents, knew or should have known that Rodeway Inn and its guests violated 18 U.S.C. § 1591 with respect to DOE by allowing Quinn to present DOE to its guests for commercial sexual activity.

72.

JSH, doing business as Rodeway Inn, acting through its agents and employees, nonetheless participated in this venture, and knowingly benefitted from that participation.

17

73.

DOE suffered and continues to suffer damage as a result of JSH's participation in her involuntary trafficking.

## DAMAGES

74.

For his own financial gain and sexual perversions, Billy Quinn forced DOE – a teenager whom he found in a wounded, desperate and vulnerable state – to endure months of brutal sexual, physical and emotional abuse.  But Quinn did not act alone: each Defendant in this case played an active and knowing role in DOE's torture.

75.

Because of the selfishness of these Defendants, DOE experienced being sold for $50.00 for the sexual pleasure of strange adult men, over and over and over for months.  She received, and internalized, the inescapable messages that:

* she was nothing more than an orifice with a person around it;

* she had no rights, no agency, no past, no future and no soul; and

* she was so lacking in value as a human being that it did not matter if they hurt DOE or even if they killed her.

76.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity.

77.

With each Defendant, DOE experienced the despairing recognition that yet another man

18

who could help her, was instead adding to her sexual and emotional victimization.

78.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their perverse sexual needs.

79.

None of those messages, and none of those recognitions, faded away simply because law enforcement finally apprehended Quinn. These are bells that cannot be un-rung.

**PUNITIVE DAMAGES**

80.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including DOE. Defendants committed the acts and omissions alleged herein and subjected DOE to brutal and inhumane treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

81.

The recovery of punitive damages is permitted under 18 U.S.C. § 1595 and 18 U.S.C. § 2255, and is appropriate in this case. This instance of reckless and callous indifference to DOE's life and safety should be punished through the imposition of punitive damages so as to make an example of

19

conduct that will not be tolerated.

## ATTORNEY'S FEES

### 82.

As a result of Defendants' actions as alleged herein, DOE was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.      For compensatory damages in an amount to be specifically proven at trial;

2.      For punitive damages in an amount to be determined at trial;

3.      For reasonable attorney's fees and the costs of litigation;

4.      For post-judgment interest at the maximum legal rate;

5.      For costs of suit incurred herein; and

6.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that this matter be tried to a jury in North Platte, Nebraska.

JANE DOE, Plaintiff,


By:   /s/ Maren Lynn Chaloupka
     Maren Lynn Chaloupka – NSBA #20864
     Chaloupka Law LLC
     P.O. Box 1724
     1906 Broadway
     Scottsbluff, Nebraska  69363-1724
     (308) 270-5091
     mlc@chaloupkalaw.net

     -AND-

     Todd Flynn – NSBA #15866
     Flynn Law Office
     P.O. Box 247
     Ainsworth, Nebraska 69210
     (402) 382-3420
     tflynnlaw@threeriver.net

     *Attorneys for Plaintiff*

21

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE, a victim of sex trafficking, | Case No. 7:25-cv-5010 |
| Plaintiff, | |
| vs. | **SECOND AMENDED COMPLAINT** |
| SHANE HARRINGTON d/b/a PARADISE CITY; TIMOTHY JEYS; MELTECH, INC., a Nebraska corporation; CARL KRAMER, SR.; JOEY BAUMBACH; and JAY SEDHI HOSPITALITY LLC, a Nebraska limited liability corporation, | |
| Defendants. | |

Jane Doe, a victim of sex trafficking, Plaintiff in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states, alleges and avers as follows:

## INTRODUCTION

1.

This case is brought pursuant to 18 U.S.C. § 1595, the civil remedy provision of the federal Trafficking Victims Protection Act (TVPA), and 18 U.S.C. § 2255.  DOE is a young woman who, as a minor child, endured repeated non-consensual sexual acts at the hands of her trafficker and his collaborators.  Her date of birth is October 1, 2003.  From July 2019 through January 2020, 15-year-old DOE was exploited as, and was expected to "perform" as, a vehicle for the perverse sexual interests of men, to include Defendants herein.  "JANE DOE" is a pseudonym, used to protect DOE's privacy and safety in recognition that she is a victim of sex trafficking.

1

2.

All of the men who used and abused DOE were fully aware that their sexual encounters were not a consensual, romantic relationship. For those men, the fact that DOE was there by coercion was "the point" – the fact of her coercion was, itself, sexually titillating. Any of those men could have refrained (or even summoned law enforcement); instead, all proceeded to subject DOE to their personal and perverse sexual preferences.

3.

Some of these Defendants have been prosecuted. DOE has cooperated with all aspects of the criminal litigation, such that the State of Nebraska was able to obtain convictions against some of these Defendants. But no Defendant has yet been held accountable directly to DOE for the harm they inflicted on her. No Defendant has yet compensated DOE for how he exploited her body and her life for his own short-term sexual gratification.

**PARTIES, JURISDICTION AND VENUE**

4.

DOE is a citizen and resident of Red Willow County, Nebraska. Her date of birth is October 1, 2003. She is proceeding under a pseudonym because she is a victim of sexual abuse.

2

5.

Defendant Shane Harrington is a citizen and resident of Omaha, Douglas County, Nebraska.



HARRINGTON was also the principal of Defendant MelTech, Inc., a Nebraska corporation and one of HARRINGTON's many corporate and partnership structures.[1] MELTECH appears to be defunct at this time; but at all times relevant herein, HARRINGTON and MELTECH owned and was doing business as Paradise City, a strip club located outside of Elm Creek, Buffalo County, Nebraska, in a joint venture with Defendant Timothy Jeys.

6.

Defendant Timothy Jeys ("JEYS") is a citizen and resident of Buffalo County, Nebraska.

---

[1]MELTECH, described by HARRINGTON as an "internet modeling company," started a website designed to monetize prurient interest. *See Harrington v. Nebraska Liquor Control Comm'n*, 2015 WL 505576 (D. Neb. 2015).

3



At all relevant times, JEYS was engaged in a joint venture with HARRINGTON and MELTECH.

7.

Defendant Carl Kramer, Sr. is a citizen and resident of Oxford, Furnas County, Nebraska.



8.

Defendant Joey Baumbach (aka "UPS Joe") is a citizen and resident of McCook, Red Willow County, Nebraska.

4



9.

Defendant Jay Sedhi Hospitality LLC ("JSH") was at all relevant times a Nebraska limited liability corporation, domiciled in Box Butte County, Nebraska.

10.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 18 U.S.C. §§ 1595 and 2255. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Furnas and Buffalo Counties, Nebraska.

## FACTUAL BACKGROUND

### *DOE and Billy Quinn*

11.

DOE was raised mostly in Furnas County, Nebraska. Her home life as a child and teenager ranged from chaotic to abusive. She was homeschooled and isolated from both peers in her age group and adults who could have been helpful to her. She did not receive the benefit of exposure to more stable, less dangerous and chaotic ways to live.

12.

By age 14, DOE had run away, and was floating between homes of older siblings and other places she could stay.  When DOE was 15, Billy Quinn, then age 55, offered to DOE that she could stay at a house he owned in Oxford, Nebraska.



13.

DOE knew Quinn.  Some of her siblings had worked for Quinn, and Quinn had previously offered DOE a job.  DOE knew Quinn to be violent.  The first time DOE was alone with Quinn, he sexually assaulted her and held a knife to her throat.

14.

But, DOE was 15 years old, homeless, and totally without resources.  She had no trustworthy family to help her.  She did not have the fund of knowledge that an adult would have, to even ask for help from people who are reliable.  And, DOE was in a county that has limited resources even for those who do know how, and who, to ask for help.  DOE was making survival decisions out of desperation, understandable immaturity, lack of information and trauma.

15.

Thus DOE accepted Quinn's offer for housing. The terms and conditions of Quinn's offer were that DOE had to have sex with Quinn.

16.

In July 2019, Quinn began to traffic DOE to other men.

17.

### *DOE, Quinn and KRAMER*

In 2019, KRAMER was 48 years old. He owned the Oxford Meat Locker & Gun Store in Oxford, Furnas County, Nebraska. He was a licensed firearms dealer and, per the Oxford Meat Locker & Gun Store website, "a proud member of the Oxford community."

18.

In autumn 2019, Quinn drove DOE to the Oxford Meat Locker & Gun Store after hours.



KRAMER was there. Quinn and KRAMER discussed KRAMER paying $50.00 to have sex with DOE. Quinn lifted up DOE's shirt to show KRAMER her breasts, and invited KRAMER to rub DOE's vagina. Quinn instructed KRAMER on how to contact DOE via Snapchat when he wanted

7

to have sex.

19.

KRAMER did not decline Quinn's invitations, contact law enforcement or do anything else to help DOE.

20.

Instead, between October and December 2019, KRAMER had sex with DOE at Oxford Meat Locker & Gun Store up to forty times, always paying DOE $50.00 after each event. On Quinn's orders, DOE then gave those payments to Quinn, and described the details of each sexual encounter to Quinn.

21.

KRAMER also demanded nude images of DOE. Via Snapchat, DOE complied with KRAMER's demands. KRAMER saved the nude images of DOE for his masturbation needs.

22.

KRAMER knew Quinn was trafficking DOE for money.

23.

KRAMER knew or should have known that DOE had no choice whether to participate.

24.

KRAMER knew or should have known that DOE was participating only under coercion.

25.

KRAMER conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to KRAMER's sexual benefit.

26.

*DOE, Quinn and Joey "UPS Joe" Baumbach*

In August and September 2019, BAUMBACH was working for United Parcel Service as a delivery driver. His route included a property owned by Quinn in Furnas County. He was known as "UPS Joe," and was friendly with Quinn. He was 59 years old.

27.

When BAUMBACH arrived at Quinn's property, Quinn invited him to walk around to the back of the house. There, DOE was in Quinn's hot tub, on Quinn's orders. DOE was naked, also on Quinn's orders.

28.

Quinn invited BAUMBACH to "check out my prize," meaning DOE. BAUMBACH did, exclaiming "wow!" BAUMBACH did not leave, call law enforcement or do anything to help DOE. Instead, BAUMBACH used his phone to record a video of DOE in the hot tub.

29.

On a separate occasion, Quinn directed DOE to masturbate for BAUMBACH. Again, BAUMBACH did not leave, notify law enforcement or do anything to help DOE. Instead, BAUMBACH not only watched, but he also recorded DOE masturbating on his cell phone on Quinn's order, saving the recording as a keepsake for his own masturbation purposes.

30.

BAUMBACH knew Quinn was trafficking DOE for money.

31.

BAUMBACH knew or should have known that DOE had no choice whether to participate.

9

32.

BAUMBACH knew or should have known that DOE was participating only under coercion.

33.

BAUMBACH conspired with Quinn in order to obtain access to sex with a teenage girl for $50.00, to BAUMBACH's sexual benefit.

34.

<u>Joint Venture of HARRINGTON, MELTECH and JEYS</u>

For many years, HARRINGTON, acting through partnerships and corporations, has done business in the adult entertainment industry. His businesses have included, *inter alia*:

* MelTech, Inc.;

* H&S Club Omaha, Inc.[2];

* Midwest Girls Club;

* ClubPC, Inc.;

* Club 120, Inc.; and

* Kali Records, Inc.

35.

Through these and other businesses, HARRINGTON has operated multiple adult clubs that offer live nude dancing. Those clubs have included, *inter alia*:

* Paradise City, outside of Elm Creek;

---

[2]In H&S Club, Inc., HARRINGTON appears to be business partners with his frequent counsel of record (and occasional target of his requests for protection orders, ***see Harrington v. Spencer***, Hall County District Court Case No. 16-761), Evan Spencer.

10

* Club Omaha, in Omaha;

* INFINITY, in Omaha;

* Club Smooth, in Lincoln;

* Hustler Club;

* Midwest Girls Club, in Grand Island; and

* The Shed, in Hastings.

36.

Municipalities have expressed concern that HARRINGTON would "sell" his adult entertainment businesses to friends or family while maintaining control and while continuing to benefit financially from the businesses.[3]

37.

At times when his adult entertainment businesses have been under investigation, HARRINGTON has also represented that he is going to retire, divest from those businesses and move to Florida.  He has not retired; he has not divested from his businesses; and while he briefly owned property in Florida, he has continued to reside in Nebraska.

38.

At all relevant times herein, HARRINGTON, MELTECH and JEYS were engaged in a joint venture whereby HARRINGTON and MELTECH owned real estate that included Paradise City, an adult entertainment club outside of Elm Creek, Buffalo County, Nebraska.

---

[3] *See, e.g., Harrington v. Nebraska Liquor Control Commission*, 2015 WL 505576 (D. Neb. 2015).

11



Between a date preceding July 1, 2019 and following August 30, 2022, HARRINGTON and MELTECH served as landlord for JEYS to operate the adult club business out of Paradise City.

39.

At all relevant times, HARRINGTON and MELTECH also owned adult clubs in other communities, including in Adams County, Nebraska (nearby Buffalo County). Pursuant to the Joint Venture, HARRINGTON and MELTECH shared dancers with JEYS.

40.

At all relevant times, HARRINGTON and JEYS operated as a Joint Venture whereby HARRINGTON owned the Paradise City property and, on paper, JEYS appeared to have agreed to buy it. During the existence of this Joint Venture, HARRINGTON and JEYS shared revenue in their operation of Paradise City. Notwithstanding the apparent "sale" of Paradise City to JEYS, HARRINGTON maintained equal right of control over the Joint Venture. As the single member of MELTECH and as JEYS' landlord and business partner, HARRINGTON was invested in the success of Paradise City. HARRINGTON shared dancers with JEYS, and he maintained supervision and control of dancers among HARRINGTON's adult entertainment businesses. HARRINGTON

12

and JEYS jointly benefitted from the revenue Paradise City generated.

41.

Together, HARRINGTON and JEYS knowingly conspired to benefit financially from their joint venture.  They did so despite that they knew or should have known that JEYS had engaged in sex trafficking, in violation of the Trafficking Victims Protection Act.

*DOE, Quinn, Shane Harrington d/b/a Paradise City and JEYS*

42.

Around Halloween 2019, Quinn drove DOE to Paradise City.

43.

Quinn knew the manager of Paradise City, JEYS.  JEYS was an agent and employee of HARRINGTON and MELTECH, acting in the course and scope of his joint venture and in furtherance of the conspiracy with HARRINGTON and MELTECH to aggrandize revenue for the joint venture from sex trafficking activity.

44.

With the knowledge and permission of JEYS, Quinn took DOE into Paradise City and showed her to a construction crew that was patronizing the club.  The manager of Paradise City knew that Quinn was in the club for the purpose of "selling" DOE to its patrons, which is what happened: next door to Paradise City was a Rodeway Inn motel, where the Paradise City patrons had sex with DOE under Quinn's supervision.

45.

JEYS facilitated one of the Paradise City dancers performing a sexual act on DOE while Quinn and DOE were there.

13

46.

JEYS, acting in the course and scope of his employment and his joint venture with HARRINGTON and MELTECH and in furtherance of the civil conspiracy therewith, knew Quinn was trafficking DOE for money.

47.

JEYS, acting in the course and scope of his employment and his joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, knew or should have known that DOE had no choice whether to participate.

48.

JEYS, acting in the course and scope of his employment and his joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, knew or should have known that DOE was participating only under coercion.

49.

JEYS, acting in the course and scope of his employment with and joint venture with HARRINGTON and MELTECH and in furtherance of their civil conspiracy, conspired with Quinn in order to promote, to Paradise City's patrons, access to sex with a teenage girl.

50.

_DOE, Quinn and Jay Sedhi Hospitality LLC_

In 2019, Jay Sedhi Hospitality LLC ("JSH") owned the Rodeway Inn, located near Paradise City outside of Elm Creek, Buffalo County, Nebraska.

51.

When Quinn took DOE to Paradise City to traffic her to patrons of that club, the

14

arrangement was for the patrons to have sex with DOE at the nearby Rodeway Inn.



52.

The employees and agents of the Rodeway Inn were, at all relevant times, acting in the course and scope of their employment with JSH.

53.

Before October 2019, the employees and agents JSH, working at Rodeway Inn, knew or should have known that the Rodeway Inn was used for sex trafficking.

54.

Red flags and direct employee interactions which alerted or should have alerted employees and agents of JSH to sex trafficking activity at the Rodeway Inn included, but was not limited to:

* Proximity to Paradise City;

* Proximity to a truck stop;

* Ability of guests to enter rooms from the parking lot, instead of traveling through a staffed hotel lobby;

* Indicia of commercial sex within the rooms, including used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels;

* Indicia of illegal drug use;

15

* Excessive requests for sheets and/or housekeeping service;

* Violence and loud disturbances in common and public hotel areas;

* Excessive calls to law enforcement;

* Hotel guest complaints; and/or

* Online reviews indicating the likelihood of sex trafficking and criminal activity at the Rodeway Inn.

55.

Before and during the period that DOE was trafficked at the Rodeway Inn, JSH ignored these signs that its hotel was used for sex trafficking, to its financial benefit.

56.

The financial benefit was that people would pay for rooms at the Rodeway Inn – an otherwise dilapidated, rundown and vermin-infested motel – because they knew they could use the rooms to have sex with victims of sex trafficking, without interference by hotel staff.

57.

JSH, acting through its agents and employees, participated in a venture with Quinn, by tacit agreement and/or pattern of conduct, by which Quinn could traffic DOE and JSH would receive the benefit of customers paying for rooms where they could have sex with DOE.

58.

There was a continuous business relationship between JSH and sex traffickers, including but not limited to Quinn. By that relationship, sex traffickers, including Quinn, knew that they could traffic captive sex workers like DOE at the Rodeway Inn without interference from hotel staff.

16

59.

JSH failed to enact any policies or training for its employees or agents to prevent sex trafficking at the Rodeway Inn.  This failure was, in fact, a choice designed to keep rooms rented by people who wanted to have sex with captive sex workers – because the hotel was otherwise an unattractive lodging option for travelers without an interest in criminal activity.

60.

At the Rodeway Inn, Quinn took DOE from room to room, presenting DOE for commercial sexual activity to the paying guests of Rodeway Inn.  DOE was coerced into sexual intercourse over and over, ending only when one of the guests forced her into anal sex and she fled from the room.

*The criminal investigation*

61.

On January 19, 2020, DOE revealed to a brother-in-law the abuse she had been enduring at the hands of Quinn and his co-conspirators, including these Defendants.

62.

DOE's brother-in-law notified the Furnas County Sheriff's Office, which in turn initiated a criminal investigation.  The investigation was taken over by the Office of the Nebraska Attorney General.  The Attorney General ultimately obtained convictions against Quinn, BAUMBACH, KRAMER, BROOKS and multiple other men who had sex with DOE for money.

**FIRST CAUSE OF ACTION**

**18 U.S.C. § 1595 and/or 18 U.S.C. § 2255**
**KRAMER AND BAUMBACH**

17

63.

KRAMER patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with KRAMER.

64.

KRAMER patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with KRAMER.

65.

BAUMBACH patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with BAUMBACH.

66.

BAUMBACH patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with BAUMBACH.

67.

DOE suffered and continues to suffer damage as a result of KRAMER's and BAUMBACH's direct participation in her involuntary trafficking.

### SECOND CAUSE OF ACTION

**18 U.S.C. § 1595 and/or 18 U.S.C. § 2255**
**HARRINGTON, MELTECH and JEYS**

68.

Doing business as Paradise City, HARRINGTON, MELTECH and JEYS participated in the

18

trafficking of DOE in violation of 18 U.S.C. § 1591.

69.

Employees and agents of Paradise City patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act with them.

70.

Employees and agents of Paradise City patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

72.

HARRINGTON, MELTECH and JEYS, doing business as Paradise City, knew or should have known that Paradise City violated 18 U.S.C. § 1591 with respect to DOE.

73.

Paradise City nonetheless knowingly participated in this venture, and knowingly benefitted from that participation.

74.

DOE suffered and continues to suffer damage as a result of the role of Paradise City and its owners/operators in her involuntary trafficking.

### THIRD CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255 - CONSPIRACY HARRINGTON, MELTECH and JEYS

19

75.

HARRINGTON, MELTECH and JEYS acted in concert, intentionally, in order to operate Paradise City in a manner that would aggrandize revenue for their Joint Venture by enhancing the prurience of the activities in, and available to patrons from, Paradise City.

76.

HARRINGTON employed management for his clubs who have taken numerous classes in human trafficking within the adult entertainment industry, whose knowledge from such classes is imputed to HARRINGTON.

77.

HARRINGTON, MELTECH and JEYS knew that a young female entering an adult entertainment club with an older man may be a victim of trafficking, and that the older man may be her trafficker.

78.

HARRINGTON, MELTECH and JEYS knew that allowing sexual contact among dancers, or between dancers and patrons, increases the potential that would-be traffickers will visit adult entertainment clubs with the women and girls they are trafficking.

79.

HARRINGTON, MELTECH and JEYS knew that operating an adult entertainment club next to an inexpensive motel increases the potential that would-be traffickers will visit the club with the women and girls they are trafficking.

80.

HARRINGTON, MELTECH and JEYS allowed sexual contact among dancers, and between

20

dancers and patrons, at Club Paradise.

81.

HARRINGTON, MELTECH and JEYS knew that Club Paradise was located within a short distance of the Rodeway Inn, an inexpensive motel.

82.

When JEYS observed Quinn with DOE at Club Paradise, he knew or should have known that DOE, a teenager, was there because Quinn was her trafficker.

83.

JEYS took zero reasonable measures to inquire about DOE's safety or to protect DOE.

84.

Instead of taking reasonable measures to protect DOE, JEYS instead permitted Club Paradise dancers to perform a sexual act on DOE in the presence of Club Paradise's patrons.

85.

Instead of taking reasonable measures to protect DOE, JEYS instead permitted Quinn to offer DOE to Club Paradise's patrons for sexual intercourse at the nearby Rodeway Inn.

86.

JEYS made these decisions because he, HARRINGTON and MELTECH shared a common purpose of aggrandizing revenue at Club Paradise through offering patrons an enhanced prurient experience, to include watching dancers perform sex acts on a teenage girl and learning from her trafficker that that teenage girl was available for sexual intercourse for money at the Rodeway Inn.

87.

JEYS, acting in furtherance of the Joint Venture with HARRINGTON and MELTECH,

21

actively contributed to DOE's damage by subjecting DOE to a sex act by Paradise City dancers , and by enabling QUINN to offer DOE's body to Paradise City's patrons.

### 88.

This constitutes a civil conspiracy and actions which constitute aiding and abetting.

### 89.

By operating Paradise City in a way that they knew attracted sex traffickers such as Quinn, and by allowing Quinn to present DOE at Paradise City for a public sex act performed by a dancer and for sexual intercourse for money, JEYS, HARRINGTON and MELTECH accomplished by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means, to wit: the aggrandizement of revenue through illegal sex trafficking.

### 90.

DOE suffered damages as a result of HARRINGTON, MELTECH and JEY's Joint Venture and civil conspiracy to enable and encourage Quinn's trafficking of DOE.

### FOURTH CAUSE OF ACTION

### 18 U.S.C. § 1595 and/or 18 U.S.C. § 2255
### JAY SEDHI HOSPITALITY

### 91.

Doing business as Rodeway Inn, Jay Sedhi Hospitality LLC ("JSH") participated in the trafficking of DOE in violation of 18 U.S.C. § 1591.

### 92.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing that Quinn used means and/or threats of force, fraud, and coercion to cause DOE to engage in a commercial sex act

with them.

93.

Guests of JSH d/b/a Rodeway Inn patronized and solicited DOE, knowing and/or in reckless disregard that DOE had not attained the age of 18 years and was being caused by Quinn to engage in a commercial sex act with them.

94.

Employees and agents of Rodeway Inn on this occasion were familiar with Quinn.

95.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn was taking a young woman from room to room was so that he could present her for commercial sexual activity to its guests.

96.

Employees and agents of Rodeway Inn on this occasion knew or should have known that the reason Quinn, who himself was not a hotel guest, was loitering on its property, outside of the hotel rooms, was because he was waiting for Rodeway Inn guests to finish their commercial sexual activity with DOE.

97.

JSH, doing business as Rodeway Inn, acting through its employees and agents, knew or should have known that Rodeway Inn and its guests violated 18 U.S.C. § 1591 with respect to DOE by allowing Quinn to present DOE to its guests for commercial sexual activity.

98.

JSH, doing business as Rodeway Inn, acting through its agents and employees, nonetheless

23

participated in this venture, and knowingly benefitted from that participation.

99.

DOE suffered and continues to suffer damage as a result of JSH's participation in her involuntary trafficking.

## DAMAGES

100.

For his own financial gain and sexual perversions, Billy Quinn forced DOE – a teenager whom he found in a wounded, desperate and vulnerable state – to endure months of brutal sexual, physical and emotional abuse.  But Quinn did not act alone: each Defendant in this case played an active and knowing role in DOE's torture.

101.

Because of the selfishness of these Defendants, DOE experienced being sold for $50.00 for the sexual pleasure of strange adult men, over and over and over for months.  She received, and internalized, the inescapable messages that:

* she was nothing more than an orifice with a person around it;

* she had no rights, no agency, no past, no future and no soul; and

* she was so lacking in value as a human being that it did not matter if they hurt DOE or even if they killed her.

102.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead prolonging her captivity.

24

103.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead adding to her sexual and emotional victimization.

104.

With each Defendant, DOE experienced the despairing recognition that yet another man who could help her, was instead treating her like an inanimate vehicle for their perverse sexual needs.

105.

None of those messages, and none of those recognitions, faded away simply because law enforcement finally apprehended Quinn. These are bells that cannot be un-rung.

## PUNITIVE DAMAGES

106.

In addition to compensatory damages, DOE hereby makes a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including DOE. Defendants committed the acts and omissions alleged herein and subjected DOE to brutal and inhumane treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

107.

The recovery of punitive damages is permitted under 18 U.S.C. § 1595 and 18 U.S.C. § 2255,

and is appropriate in this case. This instance of reckless and callous indifference to DOE's life and safety should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

### 108.

As a result of Defendants' actions as alleged herein, DOE was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 18 U.S.C. § 1595 and 18 U.S.C. § 2255.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.　For compensatory damages in an amount to be specifically proven at trial;

2.　For punitive damages in an amount to be determined at trial;

3.　For reasonable attorney's fees and the costs of litigation;

4.　For post-judgment interest at the maximum legal rate;

5.　For costs of suit incurred herein; and

6.　For such other and further relief as the Court deems just and proper.

JANE DOE, Plaintiff,

By:　/s/ Maren Lynn Chaloupka
　　　Maren Lynn Chaloupka – NSBA #20864
　　　Chaloupka Law LLC
　　　P.O. Box 1724
　　　1906 Broadway
　　　Scottsbluff, Nebraska  69363-1724
　　　(308) 270-5091
　　　mlc@chaloupkalaw.net

-AND-

26

Todd Flynn – NSBA #21945
Flynn Law Office
P.O. Box 247
Ainsworth, Nebraska 69210
(402) 382-3420
tflynnlaw@threeriver.net

*Attorneys for Plaintiff*

EXHIBIT D

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI250010781
Transaction ID: 0024360970
Filing Date: 12/31/2025 12:05:03 PM CST

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

|  |  |  |
|---|---|---|
| SHANE HARRINGTON, | ) | CASE NO. _____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | COMPLAINT AND |
|  | ) | JURY DEMAND |
| NICHOLAS M. SCALISE, JR., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

COMES NOW the Plaintiff, Shane Harrington ("Plaintiff") and for his Complaint against the Defendant, Nicholas M. Scalise, Jr., ("Scalise" or "Defendant") alleges and states as follows:

### A.    INTRODUCTION

This is an action under the common law of the state of Nebraska against Defendant for libel and slander for defaming Plaintiff.

### B.    THE PARTIES

1.    The Plaintiff, Shane Harrington, is a resident of the State of Nebraska.

2.    The Defendant, Nicholas M. Scalise, Jr., is a resident of the state of Nebraska with an address of 2711 N 48th St Omaha, NE 68104.

### C.    JURISDICTION AND VENUE

3.    This action asserts state law claims of libel and slander. As such, subject matter jurisdiction is proper in this Court.

4.    The Court has personal jurisdiction over Defendant Scalise because he is a resident of Omaha, Douglas County Nebraska.

5.     Venue is proper in this Court pursuant to Neb. Rev. Stat. § 25-403.01 because Scalise resides in Omaha, Douglas County, Nebraska, and the causes of action arose in Omaha, Douglas County, Nebraska.

**D.    FACTUAL BACKGROUND**

6.     On March 7, 2018, Plaintiffs sold Paradise City gentlemen's club located at 1780 HWY 183, in Elm Creek, Nebraska to Timmy Jeys.

7.     After the sale occurred on March 7, 2018, the Nebraska news reported that Plaintiffs had sold Paradise City to Timmy Jeys.

8.     This information was easily discoverable by way of an internet search online by Defendant Scalise.

9.     On or about December 22, 2025, Defendant Scalise posted the following on Facebook in multiple places: "CLUB OMAHA (120th & Center) owner Shane Harrington and his slime ball friends are getting charge [sic] with SEX TRAFFICKING AND SEXUAL ASSAULT" (the "Defamatory Statement").

10.     But Plaintiff has never been charged with "sex trafficking and sexual assault."

11.     Prior to December 22, 2025, there were no news articles or publicly available court filings that indicated that Plaintiff had been charged with "sex trafficking and sexual assault."

12.     The Defamatory Statement is therefore false and was made with actual malice.

13.     Upon information and belief, Defendant has posted, re-posted, texted, and spoken the Defamatory Statement on multiple occasions to others.

14.     A few days after the Defamatory Statement was posted, Defendant revised or edited the original Defamatory Statement

posting. But the Defamatory Statement was neither retracted nor corrected.

15.    Instead, Defendant wrote, in part:

a.    "I've been threatened by lawyers with a lawsuit unless I delete a post about allegations that are already public. That's not justice – that's intimidation. It won't work. I'm not backing down. I'm not apologizing, and I'm not being silenced for exercising my right to speak on matters of public concern."

b.    "Dam [sic] Shane!! Lock that fool up and put him underneath the jail"

c.    "That dude should be in jail and should not be running any strip club or be around women period."

d.    "I hope Justice is served quickly, and he is charged to the fullest extent of the law."

e.    "yea probably buying calling cards so he can stay in touch while is locked up for a while lol."

f.    "unfortunately this happened a lot and the guilty walk free as the innocent gets no justice."

16.    On or about December 29, 2025, Scalise received a letter from Plaintiff's counsel demanding a correction, retraction, and removal of the Defamatory Statement.

17.    That same day, Scalise responded via e-mail to Plaintiff's counsel, in part, as follows: "I did not state, and do not state, that Mr. Harrington has been criminally charged. Any references to criminal prosecutions were directed at other individuals who, as a matter of public record, have in fact been charged and convicted in related proceedings. To the extent any earlier language could be read otherwise, it was promptly revised or removed. I have not republished such statements."

18.     Defendant further wrote in his email: "I decline to issue an apology or retraction, as I do not concede falsity, negligence, malice, or damages."

17.     As shown above, the Defamatory Statement clearly accused Plaintiff of being "charge[d] with sex trafficking and sexual assault."

18.     While Defendant revised or removed some posts containing the Defamatory Statement, he did not publish a correction in substantially as conspicuous a manner as the original publication about which complaint was made.

19.     Also, Plaintiff continued to post statements consistent with the Defamatory statement that referenced Plaintiff being charged or put in jail.

20.     Plaintiff has now refused to retract or correct his false statements.

**E.    COUNT I: LIBEL**

21.     Plaintiff hereby incorporates paragraphs 1-20 as if fully set forth herein.

22.     Upon information and belief, Scalise knowingly and/or recklessly communicated in writing or otherwise publicized in writing multiple false statements, writings, or other communications, both express and implied, about Plaintiff which he knew to be false or, as a minimum, recklessly disregarded the truth of the matters which he asserted and publicized (herein "Written Defamatory Publications").

23.     These Written Defamatory Publications were made with actual malice and contain demonstrably false allegations of criminal activity against Plaintiff which Scalise knew or should have known were false when made, but were made with the intent to harm others and Plaintiff when made.

24.     The Written Defamatory Publications have to do with the Plaintiff's profession or career and contain criminal allegations with no factual basis. Thus, the same are also per se libelous under Nebraska law.

25.     Plaintiff's goodwill and reputation have been damaged as the result of the Written Defamatory Publications.

26.     Plaintiff has suffered actual, general, special, reputational, financial, corporate and other damages proximately caused by these intentional, reckless, malicious, negligent, and/or otherwise offensive conduct described herein in an amount to be proven at trial.

## F.    COUNT II: SLANDER

27.     Plaintiff hereby incorporates paragraphs 1-26 as if fully set forth herein.

28.     Upon information and belief, Scalise knowingly and/or recklessly communicated through the spoken word or otherwise publicized through the spoken word multiple false statements or other communications, both express and implied, about Plaintiffs which he knew to be false or, as a minimum, recklessly disregarded the truth of the matters which he asserted and publicized (herein "Spoken Defamatory Publications").

29.     These Spoken Defamatory Publications were made with actual malice and contain demonstrably false allegations of criminal activity against Plaintiffs which Scalise knew or should have known were false when made, but were made with the intent to harm others and Plaintiffs when made.

30.     The Spoken Defamatory Publications have to do with the Plaintiff's profession or career and contain criminal allegations with no factual basis. Thus, the same are also per se libelous under Nebraska law.

31.     Plaintiff's goodwill and reputation have been damaged as
the result of the Spoken Defamatory Publications.

32.     Plaintiff has suffered actual, general, special,
reputational, financial, corporate and other damages proximately
caused by these intentional, reckless, malicious, negligent, and/or
otherwise offensive conduct described herein in an amount to be
proven at trial.

**WHEREFORE**, having shown that the same is proper, Plaintiff
hereby  requests injunctive relief (temporary and permanent) whereby
Defendant publishes statements correcting said Defamatory
Statements and restraining Defendant from continuing to make them
against Plaintiff, and an award for special, general, reputational, and
all other above-plead damages, including an award for attorneys' fees,
pre- and post-judgment interest as well as any other relief this Court
may deem just and equitable.

**F.    JURY DEMAND**

The Plaintiff hereby requests a trial by jury.

DATED this 31st day of December, 2025

                    SHANE HARRINGTON,
                    Plaintiff.

        By:    s/ Michael B. Duffy
                    Michael B. Duffy, #27529
                    mduffy@fraserstryker.com
                    FRASER STRYKER PC LLO
                    500 Energy Plaza
                    409 South 17th Street
                    Omaha, Nebraska  68102-2663
                    (402) 341-6000
                    ATTORNEY FOR PLAINTIFF

#3503029.3

6